## HARKER v. GLIDEWELL and Others.

WRITTEN INSTRUMENTS—COPIES OF.—In a suit by a surety against his principal for money paid, as such, on a judgment against them, the judgment is not the foundation of the action, and it is neither necessary nor proper to file a transcript of it with the complaint.

PRACTICE.—Under the code, relief can be had against a fraudulent judgment, confessed for the purpose of defeating an honest creditor, in the same suit in which judgment is sought for the debt itself.

SURETIES.—The statutory provisions, sections 674–677 of the code, 2 G. & H. 308, furnish an easy and convenient remedy for sureties, but the remedy existing at common law is not thereby taken away.

APPEAL from the *Bartholomew* Circuit Court.

FRAZER, J.—The appellant alleged in his complaint that in *April*, 1863, *John Glidewell* and his wife confessed a

judgment of foreclosure of a mortgage, in favor of *Thomas Glidewell*, for $3,038.98; that the mortgage was executed *November* 14, 1861; that in *February*, 1862, a judgment for $178.60 was obtained against *Harker*, the plaintiff, as surety for *John Glidewell*, in favor of a third party, which *Harker* was compelled to pay; that at no time since the date of the mortgage to *Thomas Glidewell*, has *John* had any property *except* from execution, out of which to satisfy said $178, or any part thereof; that, at the date of the foreclosure, *John's* indebtedness to *Thomas* did not exceed $900; that *John* and *Thomas*, fraudulently conspiring to defraud the plaintiff, had the judgment of foreclosure entered; that the land mortgaged was worth not exceeding $2,000; that, exclusive of it, *John* had at the date of the mortgage no other property subject to execution; that the land is about to be sold to satisfy the judgment of foreclosure; and that the object of taking the foreclosure judgment, and now selling the land thereon, was and is to defraud *John's* creditors, and to prevent the plaintiff from reimbursing himself for the $178 paid by him for *John*. Relief is prayed: 1. To correct the foreclosure judgment, so that it shall be for the amount only which was actually due thereon. 2. For a judgment against *John* on account of the money paid by the plaintiff as his surety. 3. That the foreclosure judgment be held void for fraud. 4. To enjoin the sale upon the foreclosure until the suit at bar shall be determined, and for general relief. To the complaint, *John Glidewell* and wife had a demurrer sustained, and *Thomas Glidewell* also.

The questions before us are simply whether these demurrers should have been sustained?

We can not commend the complaint as a very excellent specimen of pleading, even under the code. It was doubtless prepared in great haste, to procure a temporary restraining order. But it certainly contained enough to entitle the plaintiff to a judgment against *John Glidewell*. It was neither necessary nor proper to

annex to the complaint a transcript of the judgment which the plaintiff paid. The judgment was not the foundation of that part of the suit. The payment of the money upon it constituted that cause of action. Not every paper necessary to be used in evidence need be exhibited with the pleadings. This court has already gone as far in that direction, if not farther, than I can consent to go. The demurrer of *John* and wife should have been overruled.

The separate demurrer of *Thomas Glidewell* presents a different question. The chief inquiry which it involves is, whether under our system of procedure relief can be had against a fraudulent judgment, confessed for the purpose of sweeping the debtor's property out of the reach of an honest creditor, in the same suit in which a judgment is sought for the debt itself. Under our former system, it could not be done. The party must first have established his legal claim by obtaining a judgment at law, and then have brought his suit in equity to remove the obstacles to its collection, and then the latter jurisdiction would have given him its aid. This resulted from the fundamental maxims upon which the jurisdiction of courts of equity was established and maintained. They would not usurp the jurisdiction which belonged to the courts of law but after the right was established by a judgment at law; they would then use their power to assist in its enforcement. Perhaps also they would by injunction prevent, in proper cases, the putting of property beyond the reach of execution, while the suit at law was pending. So that, in such cases, two suits were necessary to enable the creditor to realize his money. This was surely expensive and inconvenient, and produced needless delay. We think it was intended by the code to remedy this defect in the mode of proceeding. We have now a system in which law and equity are blended together in a uniform mode of pleading and practice. And it is therein expressly enacted that, "when

the action arises out of contract, the plaintiff may join such other matters in his complaint as may be necessary for a complete remedy and speedy satisfaction of his judgment." 2 G. & H. 99, sec. 72.

This seems to leave no room for doubt upon the subject. This court has heretofore understood the law to be, that the judgment might be obtained and property made subject to its payment in the same suit, and in two cases at least have so ruled. *Scott* v. *Crawford*, 12 Ind. 411; *Diblee* v. *Mitchell*, 15 Ind. 435.

But it is urged, in behalf of *Thomas Glidewell*, that the complaint does not show but that the debtor *John* has abundant other property subject to execution; and, if so, the plaintiff can not complain of the judgment of foreclosure. We have examined the complaint carefully, and can not fail to understand therefrom that the pleader intended to allege that *John* had no other property *subject* to execution. It is attempted to make this allegation no less than four distinct times in the complaint; but in three of the instances the allegation is, that he had "no. property *exempt*," etc.; in the fourth attempt the language is, that since the date of the mortgage *John* "has not had . . any property, *except* from execution, out of which to satisfy," etc. Taking all its parts together, and especially the part last quoted, we understand the language of the complaint to mean that he had no property *exempt* from execution, and none subject to execution; none out of which the debt could be made, except the land now covered by the fraudulent judgment of foreclosure.

It is urged that the complaint is fatally defective in not having annexed to it a copy of the judgment of foreclosure. But this was unnecessary, and would have been improper, for the reasons indicated in speaking of the judgment against the plaintiff. The plaintiff claims nothing upon the foreclosure; he does not sue upon it, but he seeks to remove it out of his way for fraud, not apparent upon its face.

It is further objected to the complaint, that it does not appear that the question of suretyship was raised or determined when the judgment was taken against the plaintiff, and that it is now too late to raise that question. *Laval* v. *Rowley*, 17 Ind. 36, is relied on in support of this proposition, but it does not support it. It simply decides that where a joint judgment is taken against two or more, some of whom are sureties, that the sureties, after having paid the judgment, can not have execution thereon against the principal debtor, unless the fact of suretyship has first been judicially determined. The statutory provisions, secs. 674–677 of the code, furnish an easy and convenient remedy for sureties, but the remedy existing at common law is not thereby taken away.

Judgment reversed, with costs; cause remanded, with directions to the court below to overrule the demurrers.

*Francis T. Hord* and *Stansifer & Herod,* for appellant.

*R. Hill,* for appellees.