No. 8117.

## MULLENDORE ET AL. *v.* WERTZ.

PROMISSORY NOTE.—*Principal and Surety.*—*Extending Time of Payment.*—*Joint Makers.*—*Suretyship Unknown to Payee.*—*Release.*—An agreement between the payee and one of two joint makers of a note, without the knowledge or consent of the other, a surety in fact but not known as such to the payee, does not have the effect to release the non-consenting maker. *Hall* v. *Hall,* 34 Ind. 314, distinguished.

SAME.—The mere giving of time to one of two joint obligors whose obligations are equal will not discharge the other.

SAME.—*Oral Agreement.*—*Covenant not to Sue.*—Giving time by oral agreement can not have any greater effect than a covenant by a creditor not to sue for a specified time one of two or more joint debtors. Such a covenant is not a release and furnishes no defence to the other debtor.

SAME.—Knowledge of suretyship is not presumed in favor of the sureties, but must be proved.

SAME.—A covenant with one joint debtor not to sue is a mere personal covenant.

SAME.—*Surrender of Old Note for New.*—*Maker a Principal.*—Where an heir. at the request of one of two joint makers, received their note as a part of his distributive share of the estate to which it belonged, and surrendered it for their new note for the amount of the old, as between himself and the payee, such maker became a principal.

SAME.—*Answer of Release.*—*Reply.*—In an action upon the new note, such facts constitute a good reply to an answer of discharge by extension of time of payment orally given his co-obligor in both notes.

Mullendore *et al. v.* Wertz.

SAME.—*Evidence.*—*Receipt of Heir to Administrator.*—On trial of such action, the court did not err in admitting in evidence the receipt of the heir, accompanied by testimony of the administrator explaining its execution and its terms, and that the amount included the old note.

From the Shelby Circuit Court.

*T. B. Adams* and *L. T. Michener*, for appellants.
*B. F. Love* and *H. C. Morrison*, for appellee.

MORRIS, C.—This suit was brought upon the following promissory note:

"February 14th, 1877.

"One year after date we promise to pay John Wertz, or order, eight hundred and $\frac{80}{100}$ dollars, with interest at ten per cent. per annum after maturity, and with attorneys' fees, value received, and without any relief whatever from valuation and appraisement laws.

"$800.80.                                   CLINTON MULLENDORE.

"GEORGE MULLENDORE.

Clinton Mullendore made default. George Mullendore answered the complaint in four paragraphs. The first was the general denial, which was afterward withdrawn.

The second paragraph admits the execution of the note, but avers that George Mullendore executed it as the surety of Clinton Mullendore, which fact was known to the appellee; that afterward, with such knowledge, and without the pleader's consent or knowledge, the appellee agreed with Clinton Mullendore, for a sufficient consideration, to extend the time for the payment of said note for the period of four months from the time of its maturity; that by this agreement he had been released and discharged from liability on said note.

The third and fourth paragraphs of the answer were, in substance, the same as the second.

The appellee demurred separately to each paragraph of the answer. The demurrer was overruled. He then replied to the answer in four paragraphs, the last being a general

denial. The appellant George Mullendore demurred to the first, second and third paragraphs of the reply. The demurrers were overruled. The cause was submitted to a jury, who returned a verdict for the appellee. The appellant George Mullendore moved the court for a new trial, which was overruled, and judgment was rendered upon the verdict.

The rulings of the court upon the several demurrers to the reply, and upon the motion for a new trial, are assigned as errors. George Mullendore alone appeals.

The first paragraph of the reply admits that, on the 2d day of February, 1878, in consideration of $26.33, paid to the appellee by Clinton Mullendore, being the interest in advance on the note for four months, he agreed to extend the time for the payment of the note for four months, as stated in the appellant's answer, but it was also averred that at the time of making said agreement the appellee had no knowledge of the fact that the appellant George Mullendore was or claimed to be the surety of Clinton Mullendore on said note, as stated in said answer.

The question raised by the demurrer to this paragraph of the reply is, does an agreement made between the payee and one of two joint makers of a note, without the knowledge or consent of the other, who is in fact the surety of his co-maker, have the effect to release the non-consenting joint maker from his liability, though the payee of the note was, at the time of making the agreement, ignorant of the fact that he was such surety. If this proposition is to be answered in the affirmative, as the appellant insists it should be, the reply is bad, and the demurrer should have been sustained; if in the negative, the reply is sufficient, and the demurrer was rightly overruled.

The appellant insists upon the following propositions :

First. That the verbal contract set up in the answer, and admitted by the reply, changed the contract evidenced by the note in a material part ;

Second. That one of two joint co-obligors is not authorized, without the consent of the other, to change the joint contract in any respect; and if he does, by a valid agreement, so change the contract, the non-consenting obligor is discharged.

The agreement alleged to have been made for the extension of the time for the payment of the note in suit is averred to have been made between the appellee and Clinton Mullendore. The consideration for the alleged extension was paid by Clinton Mullendore, not by George Mullendore, nor by them jointly, but by Clinton alone. George Mullendore was not a party to the contract. The contract should, therefore, be construed as the agreement and promises of the parties who entered into it; and for any violation of the terms of the agreement, or any promise or covenant contained in it, the offending party would be personally liable to the injured party, and to him alone. The agreement of the appellee must be construed as made for the benefit of Clinton Mullendore alone, and, in case of its breach, he alone would have the right to sue the appellee and recover such damages as he might have sustained.

In the case of *Draper* v. *Weld*, 13 Gray, 580, the court say: "If, as between McGregory and Stevens, they were co-sureties of Weld, the giving of time to one of them did not discharge the other, because the mere giving of time to one of two obligors, whose obligations are equal, will not discharge the other. *Dunn* v. *Slee*, Holt, N. P. 399, and 1 Moore, 2; Burge on Suretyship, 156. Giving time by oral agreement to McGregory can not have any greater legal effect than a covenant by a creditor not to sue, for a specified time, one of two or more joint debtors. Such a covenant is not a release, and it furnishes no defence to the other debtors. *Lacy* v. *Kynaston*, 12 Mod. 548; *Dean* v. *Newhall*, 8 T. R. 168; *Shed* v. *Peirce*, 17 Mass. 623; *Wilson* v. *Foot*, 11 Met. 285." The verbal agreement can not,

we think, be held to have discharged George Mullendore on the ground that it changed the contract evidenced by the note in a material part.

In the case of *Wilson. v. Foot, supra*, it is held that, where a note is signed by several parties, though part of them are, in fact, sureties for the others, yet, if that does not appear upon the face of the note, the payee does not discharge the sureties by giving time to the principal debtor, unless he had knowledge, at the time of so doing, that the other makers were sureties; and that such knowledge is not to be presumed in favor of the sureties, but must be proved; that a covenant not to sue one or more joint makers of a note does not discharge or release the others, it being regarded as a mere personal covenant. 2 Daniel Negotiable Inst., p. 289. There are many decisions of this court in full agreement with the above cases.· *McCloskey* v. *The Indianapolis, etc., Union*, 67 Ind. 86; *Davenport* v. *King*, 63 Ind. 64; *Huff* v. *Cole*, 45 Ind. 300.

In the case of *Davenport* v. *King, supra*, the court, quoting from *Neel* v. *Harding*, 2 Met. (Ky.) 247, says: "If they were all principals, an agreement with one of them to give further day of payment would not operate to release or exonerate the others. Such an agreement can not be allowed to have any more effect than it would have if the promisors were all actually, as they all appear to be, principals in the note, unless the holder, at the time he entered into the agreement, had notice that the parties who claimed to be sureties did occupy that attitude on the paper."

In some of the paragraphs of the answer, the agreement to extend the time of payment is alleged to have been made before the maturity of the note. This can make no difference. The agreement was the agreement only of the parties to it. The note still remains in full force, unaffected by the agreement for the extension of the time of payment. We have examined the authorities referred to by the appel-

lants' counsel, and think them not opposed to the conclusion which we have reached.

In the case of *Hall* v. *Hall,* 34 Ind. 314, the Halls borrowed $100, and each was to have $50. This fact distinguishes that from the case now before us. In the case of *Crafts* v. *Mott,* 4 N. Y. 603, the land, for the purchase of which the instrument was given, was equally divided between the purchasers, and this was held to operate as a division of the debt. Each of the makers was regarded as principal debtor for one-half of the land purchased, and surety as to the other half.

In the case of *Cheetham* v. *Ward,* 1 Bos. & P. 630, one of the joint obligors had been appointed executor of the obligee, and thereby discharged. This was held to discharge the other obligor. In the case of *Rees* v. *Berrington,* 2 Ves. Jr. 540, it was held that where the creditor, without the consent of the known surety, gave further time to the principal, the surety was discharged. None of these cases is irreconcilable with the cases to which we have referred in support of our conclusion. The court did not err in overruling the demurrer to the first paragraph of the reply.

The second and third paragraphs of the reply are substantially the same, and may be considered together. The third may be stated, in substance, as follows : Jacob Wertz, the father of the appellee, died intestate in Shelby county, Indiana, in 1876. At the time of his death, he held a note executed by the makers of the note in suit. Mathias Wertz was appointed administrator of Jacob Wertz, deceased. He was about to commence suit on the note given by the appellants to his intestate, with a view to a speedy settlement of the estate. George Mullendore represented to the appellee that his co-maker of said note was insolvent and worthless, and that he would have to pay the same ; that he desired the appellee to accept said note from the administrator as a part of his share of his father's estate ; that he would pay

it, but that he wanted the appellee to give him all the time he possibly could; that if he should be compelled to pay said note at once, it would ruin him; that the appellee was induced by these statements to accept of the administrator said note as a part of his share of Jacob Wertz's estate; that, at the time he received said note from the administrator, he had no knowledge of the fact that George Mullendore was surety on the same, and that the amount due on it was $800.80; that the note in suit was given for this amount, and the note received by appellee from said administrator surrendered to the appellant George Mullendore. The appellant stated to the appellee, at the time, that all he expected to be able to do for some time was to pay the interest on the note. It is averred that the appellee did not know that George Mullendore claimed to be surety on said note; that he took it with the understanding that he was the principal and responsible party, to whom he was to look mainly for payment. The reply admitted the agreement for the extension of the time of payment as stated in the answer.

We think it quite clear that, upon the facts stated in the reply, George Mullendore, as between him and the appellee, became the principal debtor. He was liable upon the note held by the administrator of Jacob Wertz, and, because of the insolvency of his co-maker, he expected to have to pay it. At his request and for his benefit, the appellee accepted the note from the administrator as cash, in payment of his share of his father's estate. For the amount due on this note, the note in suit was given, and the old note surrendered to George Mullendore, who asked to be indulged to the utmost, on the ground that he would have it all to pay. The subsequent extension of the time of payment, thus solicited, in no way operated to the prejudice of the appellant. The surrender to George Mullendore of the note received by the appellee from the administrator of Jacob

Wertz was a full and ample consideration for the note in suit; it moved directly to George Mullendore, and, as between him and the appellee, he must be held to be the principal maker of the note. Common fairness and justice demand this. There was no error in overruling the demurrers to the second and third paragraphs of the reply.

On the trial, the court permitted the appellee to read in evidence, over the objection of the appellant, a receipt, dated November 13th, 1877, executed by the appellee to Mathias. Wertz, administrator of the estate of Jacob Wertz, for $3,081.80, the appellee's share in full of the estate of Jacob Wertz. It is insisted by the appellant that the court erred in admitting this receipt in evidence. Mathias Wertz, the administrator of Jacob Wertz, testified as follows:

"George Mullendore told me that Clint was worthless; to get some of the boys to take the note and wait on him as long as possible; he first wanted me to take it; I could not; I afterward told him John" (the appellee) "would take it; after I was appointed administrator, he came to me and asked me what the amount of the note was; he said 'I will have the note to pay without doubt;' that Clint had put his property in his wife's name; and he wanted us to wait as long as possible; he wanted me to take it; I told John that George wanted him to take it, and persuaded John" (the appellee) "to take it; that George might as well have his money as anybody; that George would pay it; that George wanted as much time as possible; I told George that if John would take the note, and receipt to me for it, I could settle the estate; he said all right, to get him to take it; I told John if he would take the note and receipt to me for it, I would give it up to him; he afterward took the note and receipted for it." Witness shown receipt. "The amount of the note was included in this receipt; I gave the old note up to John."

In view of this evidence, uncontradicted and unquestioned, the admission of the receipt, if immaterial, could not operate to the prejudice of the appellant. The receipt tended to prove, in connection with the testimony of Mathias Wertz, that the appellee had taken the note held by his father as a part of his distributive share in his father's estate. It proved that he had executed a receipt, as he had agreed to do. Every fact which it tended to prove was testified to by Mathias Wertz. There was no available error in the admission of the receipt.

The appellant also objects to the following instruction, given to the jury by the court: "If you find that such an agreement existed," (that set up in the answer) "and was duly consummated by the payment of the consideration mentioned in the answer, and the time was extended to a time certain, without the consent of George Mullendore, then this would operate as a release of the surety, provided that, at the time such contract was made, and the consideration for the extension secured, the plaintiff knew that George Mullendore was surety only; but, if the plaintiff, did not know the fact at the time, it would not operate as a release."

We think there was no error in giving this instruction. It stated the law correctly. *Davenport* v. *King*, *supra*, and cases there cited. The judgment below should be affirmed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment below be in all things affirmed, at the costs of the appellant.