Gipson *et al. v.* Ogden.

No. 9990.

## Gipson et al. *v.* Ogden.

PRINCIPAL AND SURETY.—*Release by Extension of Time.*—*Judgment.*—Where there is a judgment against A. and B., which is a lien on real estate, and the creditor, having knowledge that A. is merely surety for B., by valid contract with B., extends the time of payment for a definite time without A.'s consent, the latter is released and may maintain a suit to relieve his land from the apparent lien of the judgment.

SAME.—*Consideration.*—*Chattel Mortgage.*—In such case, the execution by B. to the creditor of a mortgage on goods levied upon to satisfy the judgment, is a sufficient consideration to support the agreement to give time.

SAME.—In such case, the remedy exists though the fact of suretyship was not established by the judgment, as might have been done by virtue of the statute, inasmuch as the statute did not deprive the surety of rights existing at the common law and in equity.

SAME.—*Evidence.*—In such case, the general denial being pleaded, proof that the plaintiff was surety, and that the creditor had notice thereof, is essential.

SAME.—In such case, a covenant in the chattel mortgage to extend the time of payment until a day named, and that the mortgagor should have possession of the goods until that day, is proof of the agreement to give time.

From the Hendricks Circuit Court.

*C. A. Dryer, T. J. Cofer* and *N. M. Taylor,* for appellants. *L. M. Campbell,* for appellee.

Gipson *et al. v.* Ogden.

ELLIOTT, J.—The appellee alleges in her complaint that she is the owner of real estate upon which a judgment owned by Eliza J. Gipson, as the assignee of James Gipson, constitutes a cloud which she has a right to have removed. It is alleged that the judgment was recovered against Moses Luckey and the appellee, before a justice of the peace; that, as the payee of the note on which the judgment was rendered and his assignee well knew, the appellee was the surety of Luckey; that a transcript of the judgment was filed in the clerk's office and thus became an apparent lien on the appellee's land. It is further alleged that, on the 22d day of July, 1879, Luckey was the owner of personal property subject to execution, of the value of $140; that an execution was issued on the judgment and delivered to a constable, and the judgment was then assigned to Eliza J. Gipson. The complaint, after making the allegations we have summarized, proceeds thus: "On the 22d day of July, 1879, without the knowledge or consent of the plaintiff, the defendants entered into a new contract and agreement with said Moses Luckey, by which they agreed to and did extend the time of payment of said judgment until November 1st, 1879, and did take from said Moses Luckey a chattel mortgage on said personal property, which was recorded, and suffered and permitted said Luckey to retain and dispose of said property, without making any levy of execution upon the same, and suffered said execution to remain in the hands of said constable until October, 1879, relying upon the chattel mortgage aforesaid."

In the attack upon this pleading, counsel for appellants argue that it appears that there was mere passive inaction on the part of the creditor, and that this did not release the surety. We concur with counsel in their statement of the general principle, that mere inaction does not release the surety, for we think it well sustained by authority. *Vance* v. *English,* 78 Ind. 80; *Philbrooks* v. *McEwen,* 29 Ind. 347; Brandt Suretyship, sec. 374. But while the rule of law is well stated, the conclusion reached by counsel is radically wrong,

for the reason that the complaint shows a new contract extending the time of payment of the judgment for a fixed period. There is more than inaction; there is action of a positive nature materially changing the rights of the contracting parties.

It is established law that a contract made with the principal debtor, without the consent of the surety, extending the time of payment for a definite period, releases the latter from liability. The pleading before us shows such a contract. The execution of the chattel mortgage was a sufficient consideration for the agreement of extension, and the agreement did extend the time of payment for a definite period. The authorities are well agreed that in such cases the surety is discharged. In *Wingate* v. *Wilson,* 53 Ind. 78, a judgment was rendered upon an agreement giving to the principal an extension of six months time, and this was held to release the surety. The case cited is one of many, differing only in the particular facts but identical in principle. *Menifee* v. *Clark,* 35 Ind. 304; *Jarvis* v. *Hyatt,* 43 Ind. 163; *Hamilton* v. *Winterrowd,* 43 Ind. 393; *Huff* v. *Cole,* 45 Ind. 300; *White* v. *Whitney,* 51 Ind. 124; *Bucklen* v. *Huff,* 53 Ind. 474; *Buck* v. *Smiley,* 64 Ind. 431; *Lemmon* v. *Whitman,* 75 Ind. 318; *Cates* v. *Thayer,* 93 Ind. 156.

Many authorities are cited to prove that where the creditor does nothing more than accept additional security, the surety is not released, and we have no disposition to run counter to this well settled doctrine. 2 Am. Leading Cases, p. 391. But, while granting the existence of this general doctrine, we deny its applicability here, for the reason that the facts pleaded show that there was a new contract and an extension of time until the 1st of November, 1879. It can not, therefore, be justly asserted that there was nothing more than the acceptance of additional security. There are few principles better settled than that a surety has a right to stand upon the strict letter of his contract, and that a change in its terms, whether beneficial or injurious, releases him from liability.

It is argued that there was no release of the levy, and, therefore, no injury done the surety. This argument does not meet the case. If there had been mere passiveness, and no release of the lien, there would have been much force in counsel's contention. But there was more than mere passiveness; there was a radical change in the terms of the contract. The case does not turn upon the question whether there was a release of a lien; the pivotal point is whether there was or was not a change in the terms of the contract. Where, as here, there is a change in the terms of the contract, the courts are bound to hold the surety discharged without inquiring whether the change was or was not beneficial to him. The conclusion to which all the cases lead is, that a surety is released if the creditor fetters himself by a contract extending the time of payment, and judicial investigation ends with the ascertainment of that fact, without prosecuting an inquiry as to whether the surety lost or gained by the change. Counsel wander from the real question in quest of authority to prove, what is not denied, that mere passiveness working no injury does not operate to release the surety; for the question is, did not the change in the terms of the original contract by the new agreement, founded on the additional security supplied by the chattel mortgage, operate to discharge the surety?

It is strenuously contended that the appellee can not avail herself of the fact that she was surety, because she did not litigate that question in the action before the justice of the peace. The case of *Reissner* v. *Dessar*, 80 Ind. 307, does not decide the question here involved, for there a third party had acquired rights upon the faith that all the judgment debtors were principals; while here the question is between parties having full knowledge of all the facts. It is obvious that parties possessing ample information are not so favored as those who are induced to alter their position upon the faith of the record. In *Boys* v. *Simmons*, 72 Ind. 593, the party claiming to be surety paid the judgment, and then sought to enforce it against his co-debtor, upon the ground that the lat-

ter was the principal, but the court held that he was not entitled to do this, because the question of suretyship was not determined in the original action.    The decision, as the reasoning in the opinion shows, was put upon the ground that the remedy sought by the surety was a purely statutory one, and as he had not pursued the course prescribed by the statute, he was not entitled to the remedy he invoked.    That decision, it is quite clear, does not govern this case, for here the surety is not seeking the benefit of the statute, but is relying upon the rights vested in him by the general principles of law and equity.    Neither of these cases decides the point which here demands consideration, and we must look elsewhere for principles and authorities.

In our judgment, the statutory method of determining the question of suretyship is only exclusive in cases where the surety seeks to avail himself of a purely statutory remedy. In cases where the surety seeks to avail himself of the benefit of general legal and equitable principles, he may pursue the course recognized by the courts and is not confined to the statutory method of procedure.    In *Harker* v. *Glidewell*, 23 Ind. 219, it was held that a surety might sue and recover from his principal the money paid for him, and in the course of the opinion it was said: "The statutory provisions, sections 674–677 of the code, furnish an easy and convenient remedy for sureties, but the remedy existing at common law is not thereby taken away."    This statement of the rule was approved in *Zook* v. *Clemmer*, 44 Ind. 15, and is, indeed, recognized in that class of cases which hold that a surety who pays the debt is entitled to subrogation.    In the decisions upon that subject, and there are a great many of them, we have found no intimation that the right to subrogation can only be made available in cases where the question has been determined in the statutory method, and yet, if that method governs in all cases, it must govern in cases of subrogation.    In *Scherer* v. *Schutz*, 83 Ind. 543, the extract made by us from *Harker* v. *Glidewell*, *supra*, is quoted with

approval, and applied to a case where judgment had been rendered, without any issue as to the question of suretyship, against three persons, and two of them sought to recover upon the ground that they were sureties who had paid the debt of their principal. The case of *Leaman* v. *Sample*, 91 Ind. 236, strongly supports our proposition. In that case it was held that where one of two sureties made an issue that he was surety, and judgment went for him upon that issue, it did not conclude his co-surety who afterwards paid the judgment and sued to compel contribution. The case of *Harvey* v. *Osborn*, 55 Ind. 535, is also in point, and lends our conclusion strong support, *vide* opinion, p. 541.

It is firmly settled that a surety is not released by the extension of time unless the creditor had notice of the relationship, and it has been held that this rule applies where the assignee of the payee takes without notice that one of the makers is a surety. But this rule can not avail the appellant in his assault upon the complaint, for the reason that it charges that both the payee and his assignee had knowledge that the appellee was the surety of Luckey. There was no error in overruling the demurrer to the complaint.

The counsel for appellee, in discussing the questions presented by the motion for a new trial, assert that the extension of time to one of two joint obligors is a release of the other unless it appears that he consented to the extension. This position can not be maintained. Where the obligations of the promisors are equal, the creditor does not release one of them from liability by agreeing with the other debtor for an extension of time. *Mullendore* v. *Wertz*, 75 Ind. 431; *Davenport* v. *King*, 63 Ind. 64; *Neel* v. *Harding*, 2 Met. (Ky.) 247; *Shed* v. *Peirce*, 17 Mass. 623; *Wilson* v. *Foot*, 11 Met. 285.

It was essential to the appellee's case to prove that she was a surety on the note, and that the appellant had notice of the fact when he granted the extension of time to the principal debtor. It is not presumed, in favor of the surety, that the creditor had knowledge of the relationship. *Mullendore* v.

*Wertz, supra; Davenport* v. *King, supra; Agnew* v. *Merritt,* 10 Minn. 308. In the present instance, both the note and the judgment on their face showed that the debtors were principals, and it would be palpably unjust to hold that the assignee of the judgment was bound to know, or to presume, that the relationship between the debtors was other than that which it appeared to be.. The rule upon this subject is thus stated by a recent writer: "But where the note has been transferred to an assignee, an agreement between him and the maker, extending the time of payment, will not discharge the surety, unless he had, at the time, knowledge of the relation; and this the surety must allege and prove." Baylies Sureties and Guar. 256. In *Williams* v. *Scott,* 83 Ind. 405, it was said of an instruction given by the court, that "The instruction was also insufficient, in that it did not require the jury to find that the appellee had notice that VanGordon was a surety at the time of the agreement for an extension of time." These authorities are in line with many decisions of this court. *McCloskey* v. *Indianapolis M. & C. Union,* 67 Ind. 86 (33 Am. R.76); *Arms* v. *Beitman,* 73 Ind. 85; *Lamson* v. *First Nat'l Bank,* 82 Ind. 21; *Tharp* v. *Parker,* 86 Ind. 102.

The court, in giving instructions and in refusing to give those asked by the appellants, assumed the law to be the reverse of what the authorities assert it to be, and in thus ruling committed error which must reverse the judgment. The affidavit filed by Mr. Dryer, stating what the appellant Eliza J. Gipson would testify to, was admitted to be true, and furnished evidence that she had no knowledge that the appellee had signed the note as surety. In this state of the evidence, a reversal can not be avoided, because the entire theory of the law adopted by the court was radically erroneous.

One other question will necessarily arise on another trial, and it is, therefore, proper to decide it. That question is as to the effect of the chattel mortgage. That instrument not only bound the appellant not to attempt to enforce collection of the judgment obtained before the justice of the peace un-

-til the first day of November, 1879, but also covenanted that the principal debtor and mortgagor should retain possession of the personal property subject to execution until that time, and thus doubly fettered the creditor. It is quite clear that where a creditor accepts from a principal debtor a chattel mortgage providing for an extension of time in which to pay the debt, and granting to the debtor a right to retain possession of the property subject to execution, the surety is released in cases where the suretyship was known, and where no consent to the extension of time was given by the surety.

The other questions discussed by counsel may not arise on another trial, and we do not deem it necessary to discuss them.

Judgment reversed.

Filed Jan. 24, 1885.