Ward *et al.* *v.* The Berkshire Life Insurance Company.

No. 13,164.

## WARD ET AL. *v.* THE BERKSHIRE LIFE INSURANCE COMPANY.

MARRIED WOMAN.—*Estoppel.*—Under the law of this State, a married woman is bound by an estoppel *in pais* like any other person, and this extends to the conveyance of land, either by deed or mortgage.

SAME.—*Mortgage.*—*Representation that Loan is for Her Use.*—*When Binding.* —*Suretyship.*—A married woman who makes a representation by affidavit, which is in good faith relied on and believed to be true, that a loan is for her own use and benefit, is estopped, in a suit to foreclose a mortgage executed upon her lands to secure the loan, to deny the truth of such representation, by asserting that the mortgage was given as a security for the debt of her husband.

SAME.—*Fraud.*—There can be no estoppel where there is no fraud, but there may be fraud although there was no preconceived design to mislead or deceive. It may consist in the denial of what has been previously affirmed.

SAME.—*Check for Amount of Loan.*—*Payee Immaterial.*—It is immaterial to whom the check for money loaned was made payable, for if the loan was made to the wife the mortgage is valid.

SPECIAL FINDING.—*Clerical Error.*—A harmless clerical error in the special finding of facts is not available for a reversal of the judgment.

From the Marion Superior Court.

*T. Hanna* and *S. A. Hays,* for appellants.

*J. M. Judah* and *O. B. Jameson,* for appellee.

ELLIOTT, C. J.—The complaint of the appellee is founded on a mortgage executed since the married woman's act of 1881 went into force. It is averred that the mortgage was executed to secure a loan made to Mary A. Ward for her own benefit. The second and third paragraphs of Mrs. Ward's answer alleged coverture, that the property belonged to her, and that she was the surety of her husband. The fourth pleaded suretyship and coverture, and averred that Mrs. Ward received no consideration for the mortgage. The fifth is substantially the same as the second and third, the only difference being that it sets out the facts in detail, and really pleads the evidence.

| | |
|---|---|
| 108 | 301 |
| 124 | 598 |
| 126 | 543 |
| 108 | 301 |
| 128 | 22 |
| 108 | 301 |
| 131 | 271 |
| 131 | 541 |
| 108 | 301 |
| 134 | 35 |
| 134 | 481 |
| 108 | 301 |
| 138 | 218 |
| 108 | 301 |
| 142 | 509 |
| 108 | 301 |
| 154 | 361 |
| 108 | 301 |
| 160 | 582 |
| 108 | 301 |
| e162 | 634 |
| 108 | 301 |
| e164 | 395 |

The second paragraph of the appellee's reply alleges, in substance, that Mrs. Ward, knowing the purpose for which the loan was asked and offered, and for the purpose of inducing the appellee to make the loan and to pay three thousand dollars thereon, represented that she was borrowing the money for her own use, and not as surety for any one, and made an affidavit to the truth of such representations; that the appellee neither knew, nor had the means of knowing, that the representations were not true, but in good faith relied thereon and made the loan, which it would not have done had not such representations been made. A demurrer was overruled to this reply, and we are called upon to determine whether it was or was not sufficient.

It is argued with much ability and ingenuity, that the question is one of power, and that the legal incapacity of coverture can not be removed by fraudulent representations. In support of this contention we are referred, among other authorities, to the cases of Steadman v. Duhamel, 1 C. B. 888, and Levering v. Shockey, 100 Ind. 558.

This argument is plausible but unsound. The assumption which constitutes its foundation can not be made good. The question is not one of power or capacity, but the question is one of fact, for, if the contract was one of suretyship, Mrs. Ward had no power to enter into it, but if it was not, then she had capacity to execute it. There is no doubt that, under our present law, a married woman has the general capacity to enter into contracts. The only exceptions are those specified in the statute, and the chief of these is, that she may not enter into contracts of suretyship. Arnold v. Engleman, 103 Ind. 512; Rosa v. Prather, 103 Ind. 191; Vogel v. Leichner, 102 Ind. 55; Rothschild v. Raab, 93 Ind. 488; Wulschner v. Sells, 87 Ind. 71.

The decision hinges upon the fact that the contract was not one of suretyship, but was a contract to obtain money for the wife's benefit. While it may possibly be true that a representation by the wife that she was not under coverture

would not bind her, still, it would by no means follow that her representation that the contract was not one of surety-ship would not estop her, for, in representing the character of the contract, she does not represent that she is not under the disability of coverture. It is one thing to make a representation respecting the capacity to contract, and quite another to represent that the contract is of a given character. If a married woman should seek credit by representing that goods were for her personal use, and thus obtain credit from a merchant, we suppose no one would contend that such a representation was as to her capacity to contract, and the real case before us is not different in any legal aspect from such a case, although there is a difference as to the facts. It is very clear to our minds that a representation that money sought as a loan is for the use and benefit of the wife, is not a representation that the wife has capacity to contract, for it is not in any sense a denial of the existence of the disability of coverture, but is merely an affirmation of the fact that the contract into which she proposes to enter is a contract for her own benefit.

Our statute and our decisions declare that a married woman may be bound " by an estoppel like any other person." It may be doubtful whether this rule would not require it to be held that she might bind herself by a representation as to her capacity to contract, but, however this may be, it is quite clear that, under this rule, she is bound by a representation as to the character of the contract into which she seeks to enter, and from which she asserts she will receive a benefit.

In discussing this question it was said in *Vogel* v. *Leichner,. supra,* that "She is to be estopped as any other person, by causing the lender to believe that a state of facts exists which does not, or that the transaction is one thing, while in fact it is another." This doctrine is fully maintained in the cases of *Cupp* v. *Campbell,* 103 Ind. 213, and *Orr* v. *White,* 106 Ind. 341. In the case last cited, it was said: "She may now be bound by an estoppel *in pais,* like any other person. Such an estoppel

can only be predicated upon a wrong. It can not exist if the person dealing with her either knew the facts or was ignorant from a failure to enquire, unless he was misled by the misrepresentations of the wife."

It would nullify our statute, and render meaningless our decisions, to hold that a married woman can not estop herself by a representation as to the character of the contract into which she invites another to enter, and upon the faith of which the person with whom she contracts has parted with money or some other thing of value, and this is a result which it is our duty to avert.

It is true that there can be no estoppel where there is no fraud, but there may be fraud although there was no preconceived design to mislead or deceive. The fraud consists in the denial of what was previously affirmed. *Anderson* v. *Hubble,* 93 Ind. 570 (47 Am. R. 394); *Pitcher* v. *Dove,* 99 Ind. 175; *Continental Nat'l Bank* v. *National Bank,* 50 N. Y. 575; *Blair* v. *Wait,* 69 N. Y. 113.

In this instance, Mrs. Ward, having solemnly sworn that the loan which she asked was for her own use and benefit, can not, without a grave wrong, affirm that what she thus represented was not true. It would violate all principles of justice to permit her to deny what she had asserted, and by so doing entail loss upon one who in good faith relied upon her representations, and made the loan she asked.

Tested by the principles which we have stated, the reply was unquestionably good.

The special finding states, among others, these facts: That Mrs. Ward and her husband agreed that her property should be mortgaged to secure $3,000 for the use of the husband in the business in which he was then engaged, and that the purpose of obtaining the loan was to furnish the husband with that sum of money; that the husband made application for the loan in writing, giving the names of the borrowers as Mary and Patrick Ward, but signing his own name to the application; that at the time this application was presented

Patrick Ward represented that the money was desired by his wife for her separate use, and on being informed by the appellee's agent that if the mortgage was to secure the debt of any one else than his wife the mortgage would be void, he stated that he and his wife would make oath that the mortgage was not made to secure the debt or liability of Patrick Ward or any other person; the husband and wife did make and present to the appellee's agent an affidavit that the mortgage was not executed as a security for the debt or liability of Patrick Ward or any other person; that appellee had no knowledge whatever that the purpose of the loan was to obtain money for Patrick Ward or any other person than Mary Ward; that the agent had no other means of obtaining knowledge of the purpose for which the loan was sought, nor of the use to which the proceeds of the loan were applied, except the statements of Mr. and Mrs. Ward; that the agent relied on such statements and believed that the loan was for the use and benefit of Mrs. Ward, and that the mortgage was not executed as a security for the debt or liability of the husband or any other person. To the conclusions of law stated on the findings the appellant reserved exceptions.

Much that has been said in discussing the sufficiency of the reply applies to the questions presented by the special finding, and we shall not again travel over the ground embraced in that discussion, but shall confine our attention to such phases of the legal question as have not been considered.

It is contended that as between husband and wife, the contract was one of suretyship, and that, as this was the actual contract, the mortgage was void, because it does not appear that the appellee was ignorant of the contract between Mr. and Mrs. Ward. This argument rests on a mistaken view of the facts stated in the special finding, for it is there stated in strong and clear terms, that the appellee believed that the money was for the use of Mrs. Ward, and it is also stated

that if the appellee's agent "had not placed full reliance on the truth of the statements" of Mr. and Mrs. Ward, "the loan would not have been made," and that the appellee "had no knowledge whatever that the purpose was to obtain money for the said Patrick Ward."

It is asserted that the estoppel for which the statute provides does not extend to the conveyance of lands, either by deed or mortgage. But we can find no words in the statute which warrants this assumption; on the contrary, the language employed in the statute is very broad, for the provision is that "she shall be bound by an estoppel *in pais* like any other person."

The decisions to which we have already referred apply this statutory provision to such cases as the present, and it is impossible not to so apply it without completely overthrowing all rules of construction. Here there is a conveyance in which the husband has joined, and unless it was made for a purpose prohibited by statute, it is valid, otherwise invalid; so that the sole question is this, is the wife estopped from asserting that the conveyance was made for the purpose interdicted by statute? If conduct can in any case estop a married woman, it surely must do so in this case, and we hold that by her conduct she is concluded from asserting that the mortgage was executed as a security for the debt of her husband.

It is not material that there was a secret agreement between the husband and wife, for the appellee could not be prejudiced by an agreement of which it had no notice. The question is, not what facts were known to the mortgagors, but what facts did the appellee have knowledge of, or ought it under the circumstances to be charged with having knowledge of? It is true that the appellee, having notice of Mrs. Ward's coverture, was bound to inquire whether she had capacity to make the contract; but when reasonable care and diligence are exercised, the party contracting with the married woman may rely upon her representations. *Cupp* v. *Campbell, supra.* Here

reasonable care and diligence were exercised, for no other person than the married woman could so well inform the lender what she intended to do with the money obtained upon the mortgage, and there were no circumstances indicating that her representations were untrue, or even subjecting them to suspicion.

It is the general rule that a creditor is not prejudiced by an agreement between his debtors, constituting one of them a surety, unless he has knowledge of the agreement. *Mc-Closkey* v. *Indianapolis, etc., Union,* 67 Ind. 86 (33 Am. R. 76); *Gipson* v. *Ogden,* 100 Ind. 20, and cases cited.

This general rule can not, in its full force, be applied to contracts made with a married woman by one who has knowledge of her coverture; but it does apply in so far as to protect him where, after reasonable care and diligence, he has ascertained that the contract is one which she may execute.

Counsel couple together the motion for a new trial and the motion for a *venire de novo,* and discuss several questions, assuming that they are presented by one or both of the motions. We shall adopt the method of counsel and consider the questions without enquiring into the propriety of the method in which they are presented.

It is complained that one of the paragraphs of the findings of the court is insufficient because it asserts that the court is unable to determine to whom the check given for the proceeds of the loan was made payable. This was utterly immaterial, and it was not necessary to make any statement at all upon that subject. No matter to whom the check was made payable, if the loan was made to the wife, the mortgage is valid. The manner in which the check was drawn might have furnished some evidence as to the person to whom the loan was actually made, but it was not an inferential fact entitled to a place in the special finding. Like surplusage in pleadings, such an immaterial finding does not vitiate.

It is perhaps true, that in one of the paragraphs of the

special finding, the court made a mistake in giving the date of the note and mortgage, but other portions of the finding clearly show that this was a mere clerical error. At all events it was not, as the whole record plainly shows, an error that prejudiced the substantial rights of the appellants, and it is only substantial errors that entitle parties to a reversal.

Questions as to the sufficiency of the evidence to sustain the special finding are made and argued, but we need do no more than say that there is evidence sustaining these findings upon all material points, and refer to the rule that in such cases this court will not disturb the finding.

Judgment affirmed.

