No. 16,830.

SHIRK *v.* NORTH.

MARRIED WOMAN.—*Promissory Note.*—*Indorsement.*—*Suretyship.*—*Estoppel.*—*Innocent Purchaser.*—Where a wife, being the owner of a promissory note, indorses the same in blank, without restriction, and delivers the possession thereof to a creditor of her husband as collateral security for the latter's debt, and such creditor sells and assigns the note to an innocent purchaser for value, the latter acquires title, the wife being estopped to assert that her assignment was different from what it appears to be.

From the Howard Circuit Court.

· *J. Mitchell, M. Bell* and *W. C. Purdum,* for appellant.

*J. W. Cooper,* for appellee.

DAILEY, J.—This was an action brought by the appellee Susannah North, against Ananias D. Hensler, Mary Hensler, the First National Bank of Peru, Indiana, Richard A. Edwards, and Milton Shirk, to foreclose a mortgage on certain real estate in Howard county, in the State of Indiana, against Ananias D. Hensler for the amount due on two notes of two hundred dollars each, and to recover said notes, which she averred were in the

possession of the defendant, the First National Bank of Peru, or the defendant Richard A. Edwards, or the defendant Milton Shirk. The following is a history of the cause as made by the pleadings: The complaint is in one paragraph, and alleges that on April 14, 1890, Ananias D. Hensler, a defendant below, executed to the plaintiff, Susannah North, eight promissory notes, the first seven calling for two hundred dollars each, and the last note for two hundred and fifty-two and $\frac{50}{100}$ dollars, due respectively March 15th of each year, beginning on March 15, 1891, and ending on March 15, 1898. That these notes provide for six per cent. interest per annum; that all of said notes are payable with attorney's fees, and were given as the purchase price for the interest of the plaintiff in certain real estate inherited from her father, situate in Howard county, Indiana, a description of which is set out in the complaint. That the first two notes are due and unpaid. That on the same day, said Ananias D. Hensler and Mary Hensler, his wife, to secure the payment of said notes, executed and delivered to the plaintiff a mortgage on said real estate, copies of which notes and mortgage are set out as exhibits to the complaint. It further avers that at the time of making said notes, and ever since, the plaintiff was a married woman, the wife of Gary W. North. That on the 22d day of April, 1890, after the execution of the notes to her as aforesaid, her said husband executed to one Abraham S. Yoder two notes of two hundred dollars each for an interest in a patent right known as "Kentucky Single Tree" for territory in certain counties in said State. That through the importunities and persuasions of her husband and said Yoder, she made a pretended assignment of two of said notes, being the notes falling due March 15, 1891, and March 15, 1892, for two hundred dollars each, to said Abraham S. Yoder as collateral security

for the payment of the notes given by her husband to said Yoder. The complaint further avers that in April, 1890, said Yoder assigned the notes executed by said Hensler to the plaintiff, which had been assigned to him as such collateral security to either the defendant, the First National Bank of Peru, Indiana, Richard A. Edwards, or Milton Shirk, and one or the other of them has the possession thereof, but she does not know which. The complaint further avers that the pretended assignment of said notes to said Yoder by the plaintiff, as collateral security for the debt of her husband, is void, and the same did not pass any title to said Yoder, nor did his assignment pass any title to the assignee. Prayer that the assignment be declared void, that said notes be adjudged the property of the plaintiff, that she have judgment thereon against said Ananias D. Hensler for two hundred and fifty dollars, the foreclosure of the mortgage against all the defendants, and other proper relief.

The defendants, the First National Bank of Peru, Indiana, Edwards, and Shirk each filed separate demurrers to the complaint, which demurrers were severally overruled, and each excepted thereto. The last three named defendants filed their joint answer in denial. Thereupon the defendants, the First National Bank of Peru, Indiana, and Edwards, each filed a separate answer in disclaimer. The defendant Shirk filed his separate answer in one paragraph, to which a demurrer was sustained by the court. By leave of court, the defendant Shirk then filed his amended answer, with exhibits, to the complaint, substantially as follows: That the defendant has been a resident of Peru, Miami county, Indiana, for over thirty years; that he is president of the First National Bank of said city, and is a broker who purchases notes from time to time, of persons who offer them for sale at his office; that in April, 1890,

the plaintiff, Susannah North, assigned the notes sued on to one Abraham S. Yoder, by writing her name on the back thereof, and delivering them to him; that in said month said Yoder came to his office and offered said notes for sale, and said he was the owner thereof; that said defendant finding said notes in his possession, and properly assigned by the plaintiff, Susannah North, by written indorsement of her name in blank, purchased them of said Yoder for a valuable consideration before maturity, and said Yoder assigned and transferred said notes to said defendant by written indorsement thereof, and delivered them to him.

The answer contains a copy of the notes and indorsements thereon.

It further avers that the defendant, at the time he purchased said notes of said Yoder and paid him therefor, had no knowledge whatever that said notes had been obtained by said Yoder from said North or her husband as collateral security for the debt of her said husband, or that he obtained them in any other way than by a straight purchase from Susannah North, or that she claimed any ownership therein; that at the time of the purchase he believed said Yoder to be the *bona fide* owner of the notes, and, in the purchase, he relied exclusively on the assignments thereon made by the plaintiff, and the possession thereof by said Abraham S. Yoder. Wherefore he says the plaintiff ought not to maintain her action against him.

The first and second errors assigned test the sufficiency of the complaint as against the appellant, and the third tests the sufficiency of appellant's amended answer.

As these alleged errors involve the same question, they may very properly be considered together, and as the demurrer to the amended answer will reach back to the complaint, we will examine its averments.

Section 5501, R. S. 1881, being section 7515, Burns' Rev. 1894, provides that "All promissory notes, bills of exchange, bonds, or other instruments in writing, signed by any person who promises to pay money,    *    *    * shall be negotiable by indorsement thereon, so as to vest the property thereof in each indorsee successively."

The section following authorizes the assignee of any such instrument, so indorsed, to recover in his own name from the person who made the same.

"The effect of these provisions is to vest in the indorsees of the instruments named therein, whether such instruments be technically negotiable by the law merchant or not, a complete legal title, as well as a right of recovery by indorsees in their own names, respectively. Whatever right remains in the assignor of an instrument thus assignable, after the holder has transferred it by an unrestricted indorsement, must of necessity be of a purely equitable character." *Moore* v. *Moore*, 112 Ind. 149 (152).

The answer raises the question of the effect of the assignment of said notes, and the subsequent purchase of them by the appellant, who maintains that he acquired a good title to these notes for the following reasons: The appellee assigned said notes to A. S. Yoder by the written indorsement of her name on the back thereof in blank, and without any restrictive written conditions on the notes. She also delivered the possession of them to Yoder, and thus, by her own acts, clothed him with the highest *indicia* of title, viz., assignment and possession, and when he brought the notes to the appellant and offered them for sale, he had the most indisputable title that can accompany personal property, viz., the legal title by indorsement and possession.

1 Wait's Actions and Def., 598, and cases cited, recognizes the doctrine that where actual delivery accom-

panies the indorsement or transfer of a bill or note, there is an important legal presumption in favor of the holder or possessor of negotiable paper,  *   *   *   that he is a *bona fide* purchaser for value, before the bill or note came due.

It appears that the appellant purchased the notes in suit in the ordinary course of business, and he looked to the evidences of title in making the investment. There is no denial in the complaint, that the appellee made the assignment and delivered the notes to Yoder. The appellant paid a valuable consideration for them, relying upon the fact that they were properly assigned and were in Yoder's possession.

It is a familiar rule of law that where one of two equally innocent parties must suffer, the one who has put it within the power of another to impose on an innocent person must be the one to bear the loss. *Stoner* v. *Brown,* 18 Ind. 464; *Moore* v. *Moore, supra.*

In this case the appellee, by her indorsement of the notes in blank, without any restrictive conditions written thereon, and the delivery thereof to Yoder, placed it in his power to impose on the appellant. The appellee could have protected herself by making a restrictive written indorsement on the notes, stating that they had been assigned as collateral security for the debt of her husband. This would have precluded the person in whose favor it was made from making such a transfer as would create a right of action against either the party making the indorsement or any of the antecedent parties. 1 Wait's Actions and Def., 597.

By so doing, she would have put every person to whom Yoder attempted to sell the notes, on his guard, and prevented him from being imposed upon. She did not choose to do this, and, as between her and the appellant, she must be the one to suffer from her negligence. As

against the careless assignor, the law favors the diligent, good faith assignee, who is a holder of indorsed paper for a valuable consideration, although it may not be governed by the law merchant. The appellee having indorsed the notes in blank and delivered them to Yoder, the force and effect of these acts were to vest a good title in such innocent purchaser for value. The indorsement in blank was regular, and could not be changed by parol evidence so as to show a different state of facts from what the blank indorsement presented. 1 Wait's Actions Def., 596, and cases cited; *Houck* v. *Graham*, 106 Ind. 195 (198); *Moore* v. *Moore, supra.*

It is also contended by the appellant's counsel, that the appellee is estopped by her own acts from asserting a claim to the notes in controversy. Section 5117, R. S. 1881, being section 6962, Burns' Rev. 1894, contains this proviso: That a married woman shall be bound by an estoppel *in pais*, like any other person. Applying this principle to the case at bar, it would seem the point is well taken. If these notes had been owned by the husband of the appellee, and he had assigned them in blank and delivered them to Yoder it could scarcely be assumed by counsel for the appellee, that he would not be estopped from claiming or asserting an ownership in the notes. If, then, a married woman is to be estopped, like any other person, the appellee would be bound by her acts in this cause and estopped from claiming these notes against the appellant.

In *Cupp* v. *Campbell*, 103 Ind. 213, on page 220, cited by counsel on both sides, the court clearly lays down the doctrine of estoppel, as applied to married woman, as follows: "While it is true that a married woman is now subject to an estoppel *in pais*, like any other person, she is not to be estopped in any manner different from any other person. Some element of fraud, misrepresentation

or concealment must enter into her conduct, so that the estoppel shall be predicated upon tort, and not upon con-- tract. A married woman has no more right to injure or mislead others by her conduct or representations than if she were *sui juris*, and where it is made to appear that by fraud, misrepresentation or concealment, she has led one into contracting with her as principal, she will not be permitted to gainsay such representations as may have induced another to act who in good faith relied on them."

It will thus be seen that a married woman may be precluded from asserting a fact by previous concealment inconsistent therewith on her part, as well as by fraud or misrepresentation; she may utter no words, make no misrepresentations in language, but if, as stated, she conceals the facts, or misrepresents them by concealment, she is a wrongdoer, and is to be estopped like any other person.

Appellee avers in her complaint, that she assigned the notes in suit as collateral security for the debt of her husband, but she indorsed them in blank and delivered them to him. She concealed the facts by her indorsement in blank without restrictive conditions that she had transferred them to him as collateral security for the husband's debt. By her unlimited indorsement of these notes, and their delivery to Yoder, she misrepresented the facts, and put it in the power of Yoder to dispose of them to an innocent person. She clothed Yoder with the highest *indicia* of ownership of personal property, and sent forth no words of warning by which innocent and unsuspecting persons could be put on their guard. The appellant, in his answer, says he expressly relied upon appellee's indorsement and the possession of the notes by Yoder. It is clear that the appellee has, by her

own conduct, brought herself within the rule declared in *Cupp* v. *Campbell, supra,* and she is now estopped, by her own acts, from claiming the notes in controversy against the appellant. *Ward* v. *Berkshire Life Ins. Co.,* 108 Ind. 301; *Rogers* v. *Union Central Life Ins. Co.,* 111 Ind. 343; *Lane* v. *Schlemmer,* 114 Ind. 296; *Long* v. *Crosson,* 119 Ind. 3.

In *Moore* v. *Moore, supra,* pp. 152, 153, the doctrine here laid down is expressed as follows: "The more modern rule upon the subject under consideration seems to be, that where the owner of things in action, although not technically negotiable, has clothed another, to whom they are delivered in the method common to all mercantile communities, with the usual apparent *indicia* of title, he will be estopped from setting up against a second assignee, to whom the securities have been transferred for value and without notice, that the title of the first assignee was not perfect and absolute." Numerous authorities are cited in support of this proposition.

Pomeroy's Remedies and Remedial Rights, paragraph 161, is as follows: "In short, whenever the owner of a non-negotiable thing in action delivers the same to another person, and accompanies the delivery by an assignment thereof, absolute on its face, and this person transfers the same to a purchaser for value who relies upon the apparent ownership created by the written assignment, and has no notice of anything limiting that apparent title, the original owner is estopped from asserting as against such purchaser any equities existing between himself and his immediate assignee, and any interest or property in the security, * notwithstanding the written transfer." For these reasons, in our opinion, the court erred in overruling the demurrer to the complaint and in sustaining the demurrer to the amended answer of the appellant.

Judgment reversed and cause remanded, with directions to sustain the demurrer to the complaint.

