HOME SAVINGS BANK, APPELLANT, v. W. A. STEWART ET AL., APPELLEES.

FILED MARCH 21, 1907.   No. 14,717.

1. Notes: POSSESSION: PRESUMPTION. The original payee of a negotiable note in possession thereof is presumed to be the owner, and has ostensible authority to accept money or property in discharge thereof, although the note bears the blank indorsement of such payee.

2. ———: ESTOPPEL. Where the owner of a note clothes another with

the indicia of ownership and ostensible authority to contract with the maker of the note for the discharge thereof, and the maker, relying upon such ostensible ownership and authority, delivers to such person certain property, which the latter accepts in payment and discharge of the note, the owner is estopped to deny the authority of such person to act in the premises.

3. Trial: INSTRUCTIONS. The practice of setting out the pleadings at length in the charge to the jury, instead of a concise statement of the issues tried, disapproved.

4. Appeal: INSTRUCTIONS: HARMLESS ERROR. A complaint that the instructions covering a particular theory of one of the defendants are erroneous will not be considered where the record shows that the result of the trial would have been the same whatever the finding as to that particular theory.

5. Appeal: REVIEW. An objection at the close of an argument, "to the manner and style" of the argument, without a ruling of the court thereon, presents nothing for review in this court.

6. Evidence examined, and *held* sufficient to sustain the verdict.

APPEAL from the district court for Red Willow county: ROBERT C. ORR, JUDGE. *Affirmed.*

*W. S. Morlan,* for appellant.

*Starr & Reeder,* contra.

ALBERT, C.

On the 17th day of December, 1901, W. A. Stewart bought some cattle from H. T. Church to feed for the market. The money to pay for them was advanced by Shelly-Rogers Company, on a note of that date, payable to itself on the 14th day of July, 1902, signed by Stewart and indorsed by Church. The note was secured by mortgage on the cattle. Before the maturity of the note the company indorsed it in blank and discounted it to the Home Savings Bank of Fremont. Afterwards, on the 15th day of July, 1902, Stewart delivered the cattle included in the mortgage, with some others, to the company, who disposed of them and remitted the proceeds to the savings bank, who on receipt of such proceeds credited them on the

43

note. The Savings Bank afterwards brought this action against Stewart and Church to recover the remainder due on the note. The defendants answered separately, each admitting the execution and indorsement of the note by them, respectively, and its delivery to said company, and alleging, in substance, that Stewart's delivery of the cattle to the payee company on the 15th day of July, 1902, was in pursuance of an agreement between him and the said company to the effect that, in consideration thereof, the company would receive and accept the same in full payment and discharge of the amount due on the note; that at the time of making said agreement, and of the delivery of the cattle in pursuance thereof, the said company, with the knowledge and consent of the plaintiff herein, was in possession and control of the note in suit, claiming to be the owner and holder thereof, with authority to receive payment thereon and to contract with reference to the discharge thereof; that said Stewart, relying upon such ostensible ownership and authority of said company, entered into the said agreement, and fully kept and performed his part thereof; that the said company at the time was in fact the agent of the plaintiff for the collection of the said note, with full authority to receive payment thereon, and to make contracts for the discharge thereof, and that the plaintiff is estopped to deny that said company was the owner of the note at the date of the delivery of said cattle, or that it was without power and authority to enter into said agreement for the discharge of the said note. Church, proceeding on the theory that his liability was secondary, interposed an additional defense, available only to himself; but, for reasons which will hereafter appear, an extended notice of that defense is not required. The facts relied on as a defense were put in issue by the reply. The case was submitted on the theory that Church's liability was secondary. The jury found generally for the defendants, and judgment went accordingly. The plaintiff appeals.

Plaintiff contends that the verdict is not sustained by

sufficient evidence.  As the case was submitted on the theory that Church's liability was secondary to that of Stewart's and the jury found in favor of both defendants, it is clear that they must have found in favor of the defendants on the defense available to both, which we have heretofore set out in substance.  That being true, the question presented is whether the evidence is sufficient to sustain that defense.

Stewart testified, in substance, that about the time the note matured he wrote the company with the view to turning in some cattle in discharge of the debt; that afterwards their agent called on him and produced the note and mortgage; that, after talking the matter over, it was agreed between them that he should turn over to the company the cattle covered by the mortgage, and four head of other cattle, in full satisfaction of the amount due on the note; that the cattle were to be delivered at a neighboring town the next day but one, and that it was understood that the agent would not be there to receive them in person, but that they were to be left at a certain livery barn.  It was also understood, according to his testimony, that the note, and certain other papers of which it was a renewal, should be subsequently forwarded to him.  He further testified that he delivered the cattle at the time and place agreed upon, and that he made the settlement with the agent, and delivered the cattle in pursuance thereof, without notice or knowledge that the plaintiff owned or claimed to own the note.  That the company got the cattle covered by the agreement, or a portion of them at least, sold them and remitted the proceeds to the plaintiff, who indorsed it on the note, is conclusively established.  From the verdict of the jury it is quite clear that they gave full credit to Stewart's testimony with respect to his settlement with the company's agent.  While that testimony does not stand uncontradicted, it is not inherently improbable.  In fact it is corroborated to a certain extent by other circumstances appearing of record.  Such being the case, we are not at liberty to disregard it, but, under the finding of the

jury, must regard the fact of the settlement, and the circumstances under which it was made, as conclusively established.

Proceeding, then, on the hypothesis that the company's agent was in possession of the note at the time of the settlement with Stewart, there is no claim or pretense that his possession was wrongful. On the contrary, it was as agent of the company, which must have been in possession with the knowledge and consent of the plaintiff. The plaintiff, then, must be held to have clothed the company with the indicia of ownership, and allowed it to hold itself out to Stewart as the owner and holder of the note, and, as such, having full power and authority to enter into an agreement for its discharge. Acting upon such ostensible ownership and authority Stewart entered into the agreement for the discharge of the note, and fully kept and performed his part of it. These facts, we think, estop the plaintiff to deny the authority of the company to make the agreement or to receive the property agreed upon in discharge of the note. *Paulman v. Claycomb,* 75 Ind. 64; *Cothran v. Collins,* 29 How. Pr. (N. Y.) 113. See, also, *Thomson v. Shelton,* 49 Neb. 644; *Phœnix Ins. Co. v. Walter,* 51 Neb. 182; *Holt v. Schneider,* 57 Neb. 523.

It is next claimed that the court erred in an instruction to the jury to the effect that the burden was upon the plaintiff to prove every material allegation of its petition by a preponderance of the evidence. One ground upon which this instruction is assailed is that neither by it nor by any other portion of the charge were the jury instructed what allegations of the petition were material. The petition was set out at length in one of the instructions. Our attention has not been called to any immaterial allegation which it contains, nor have we discovered any. Therefore, if the jury disregarded any of the allegations, the error would inure to the plaintiff's rather than to the defendants' advantage. It further appears that the court was not asked to supply the omission now complained of. On this state of the record it would seem

that the plaintiff is not in a position to complain of this feature of the instruction. It may be said in passing that the practice of copying the pleadings into the instructions is not to be commended. A better practice is to make a concise statement of the issues to the jury, and not leave it to them to sift the pleadings to find them.

Another objection to these instructions is that, while the execution of the note and the indorsement of the payment thereon stood admitted by the pleadings, they were included among the questions to be determined by the jury according to this instruction. These matters stood admitted throughout the whole trial. The jury were instructed that they stood admitted. In such circumstances, the possibility that the jury, by the instruction in question, were led to believe that such matters were still in dispute, and that they were at liberty to find against the plaintiff thereon, is too remote to be seriously considered.

The plaintiff complains of an instruction to the effect that the possession of a promissory note is presumptive of ownership. One criticism urged against this instruction is that there was no evidence to warrant it. This criticism is unfounded. According to Stewart's testimony, an agent of the payee company, with the note in his possession, called on him in response to a letter to the company looking to a settlement of the debt; the cattle were delivered to this agent, who, in turn, delivered them to the company, whose agent he was at the time. His possession, therefore, was the possession of the company, which could only act through agents. The evidence was ample, we think, to warrant the instruction.

Another criticism of this instruction is that it ignores the fact that the note was indorsed by the company. The indorsement was in blank. A negotiable note indorsed by the payee is payable to bearer. Selover, Negotiable Instruments Law, sec. 152; 1 Daniel, Negotiable Instruments (5th ed.), sec. 693. The possession of a negotiable note indorsed by the payee in blank is presumptive of ownership. See 1 Daniel, Negotiable Instruments (5th ed.), secs.

573, 812, and 2 Daniel, Negotiable Instruments (5th ed.), sec. 1191. An indorsement by the payee in blank will not affect his right to sue on a note payable to his order, while it remains in his hands. 2 Daniel, Negotiable Instruments (5th ed.), sec. 1192a. From the authorities cited, it would follow that the presumption of ownership arising from possession was not affected by the blank indorsement of the payee, under the evidence in this case.

The plaintiff tendered certain instructions, to the effect that a settlement in discharge of the note would not be binding unless authorized by it. These instructions wholly ignored the theory of ostensible authority, and, for that reason, were properly refused.

The plaintiff also complains of certain instructions given touching the defense urged by Church, going merely to his own liability on the note. As we have seen, the case was submitted on the theory that his liability on the note was secondary to Stewart's. That being true, while the jury might have found in his favor on the separate defense urged by him, and at the same time against Stewart, a finding in favor of Stewart necessitated a finding in favor of Church. As they found in favor of Stewart, thereby necessitating a finding in favor of Church, error in the submission of the issues raised by the special defense urged by the latter would be error without prejudice.

Lastly, it is insisted that the record shows misconduct on the part of counsel for the defendants in his closing argument to the jury. At least the closing portion of this argument was taken down and is made a part of the bill of exceptions. It covers between 12 and 15 pages. No objection was interposed until the close, when counsel for the plaintiff interposed an objection to the effect that he "objected to the manner and style of the foregoing argument, and then and there duly excepted to the same." No ruling of the trial court was asked and none made. As was said in Chicago, B. & Q. R. Co. v. Kellogg, 54 Neb. 127: "This court, in a proceeding of this kind, does not

review the conduct or actions of counsel in the case, but reviews the rulings, orders, and judgment of the district court, and since it did not make an order, nor refuse to make an order, in reference to the conduct of counsel, we cannot make one." We might add that a party to a suit cannot sit quietly throughout an argument, without raising an objection to any statement made therein, and then obtain a review of the argument on a general objection to the effect that he objects to its manner and style.

The record fails to disclose any error that would warrant a reversal of the judgment in this case, and we therefore recommend that it be affirmed.

DUFFIE AND JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.