Earle et al. *v.* Fletcher American National Bank.

[No. 9,889.    Filed June 20, 1919.]

1. Bills and Notes.—*Accommodation Paper.—Holders Without Notice.*—One who has received accommodation paper, even after it has been diverted from its contemplated purpose, without notice of the diversion, in good faith and for value, is entitled to recover thereon. p. 567.

2. Bills and Notes.—*Discharge of Surety.*—In order that a surety, as such, may be discharged by the acts of the creditor or obligee, the latter must have knowledge of the existence of the relation. p. 567.

3. BILLS AND NOTES.—*Accommodation Paper.—Maker's Liability.*— Where one takes accommodation paper without knowledge of its true character, the accommodation party is bound by his apparent standing on the face of the instrument and cannot claim the privilege of a surety of the real debtor. p. 567.

4. BILLS AND NOTES.—*Principal and Surety.—Notice of Relation.— Unindorsed Noncommercial Paper.*—The fact that a note given as collateral to secure the payment of a loan is noncommercial paper, and is unindorsed, does not charge the creditor with knowledge that the maker is merely surety. p. 568.

5. ESTOPPEL.—*Accommodation Paper.—Innocent Holders.—Right of Recovery.*—Where a mother invested her son with apparent ownership of a noncommercial note and mortgage, which in fact was accommodation paper, and the son, by depositing such paper as collateral security, obtained not only the loan contemplated by the maker of the accommodation paper, but also several renewals thereof, the lender, being without notice, could recover on the collateral on the son's failure to make repayment, since, where one of two innocent persons must suffer by the act of a third, he who put it in the power of the third to do the act must suffer. p. 568.

From Porter Circuit Court; *H. H. Loring,* Judge.

Action by the Fletcher American National Bank against Effie S. Earle and another. From a judgment for plaintiff, the defendants appeal. *Affirmed:*

*A. D. Bartholomew, John H. Gillett* and *Gerald A. Gillett,* for appellants.

*R. R. Peddicord, E. D. Crumpacker, Grant Crumpacker* and *Owen L. Crumpacker,* for appellee.

NICHOLS, P. J.—This suit was upon a note executed by appellant John H. Earle, and upon a note and mortgage executed by appellant Effie S. Earle to her coappellant, and claimed by the appellee to be collateral security for the payment of the first-mentioned note. Hereinafter, appellant Effie S. Earle will be mentioned as appellant.

Appellee's amended complaint was in one para-

graph, with appellant and said John H. Earle as defendants therein. In substance, it was as follows: On the —— day of ——————, 1914, said John H. Earle borrowed of appellee $2,000, executing his note therefor, payable three months after date. At that time he held and owned a note for $2,000, secured by a mortgage on certain real estate, which note and mortgage were executed by appellant, and which he assigned as collateral security to appellee to secure said loan, which said note so assigned is due and wholly unpaid. When the note executed by said John H. Earle became due on January 23, 1915, he renewed it to April 15, 1915, by executing a new note due at said last-named date, which note was not given in payment. To secure its payment he left with appellee the said note and mortgage of appellant. Said renewal note is due and wholly unpaid. Said collateral note and mortgage were assigned by said John H. Earle to appellee by written assignment. A reasonable attorney's fee for the collection of the note of said John H. Earle is $250.

The said collateral note is noncommercial paper. The assignment thereof is in writing, in which it is provided that the same is as collateral security, and that it is "to include any and all renewals of promissory notes or new promissory notes or other obligations accepted in payment of former obligations." John H. Earle suffered default. Appellant filed an answer to the amended complaint in five paragraphs. The first was a general denial. The second admitted the execution of the note and mortgage, but averred that they were executed to secure the payment of a note executed by said John H. Earle to appellant, dated September 25, 1914, for a loan to him of $2,000,

and due ninety days after date, and for no other or different purpose, which appellee well knew, and that said note was taken up at maturity. The third paragraph was a plea of no consideration.   The fourth paragraph admitted the execution of said note and mortgage, but avers that they were executed for the sole purpose and upon the sole condition that the payee might use the same as collateral for a loan to him from appellee of $2,000, to be evidenced by a note therefor, payable in ninety days after its execution. That pursuant thereto the said John H. Earle borrowed said $2,000 from appellee, executing his note therefor, payable in ninety days after its execution, drawing eight per cent. interest from maturity, said note being the first-mentioned note in plaintiff's complaint, and with which he deposited appellant's note and mortgage as collateral security, but without any indorsement, and that the same are not transferred or in any manner assigned by said John H. Earle to appellee, and that they were held by appellee as a bare deposit of papers in the original form without any writing, collateral or otherwise, transferring either of them to appellee.   When said first-mentioned note fell due, to wit, on December 24, 1914, said John H. and appellee entered into an agreement surrendering said note, and in consideration of such surrender said John H. executed a new note, in lieu of the former, due January 23, 1915, and appellee extended the time of payment to said January 23, 1915, and accepted interest to said date from said John H. On January 23, 1915, by agreement, said note then maturing was surrendered, and in consideration of such surrender said John H. executed a new note in lieu thereof due April 15, 1915, and paid the interest

thereon to said date. Said last-mentioned note against said John H. is the note sued on in appellee's complaint. Appellant executed to said John H. the said note and mortgage as surety only for the first of said notes, and that said note and mortgage were wholly without a consideration, saving only as they were given as an accommodation to enable said John H. to obtain the first of said loans, as evidenced by said ninety-day note. Appellant had no notice or knowledge of either of said agreements between appellee and said John H. for the extension of the time of payment or anything pertaining thereto, and has never given her consent to anything that was so agreed to be done between appellant and said John H., and did not know or consent that her said note or mortgage should be held as security for other than the said first note, if so they were, and that said extensions were wholly without appellant's consent, and appellee at all times knew she was the surety only. This paragraph of answer was verified.

The fifth paragraph was the same as the fourth, except that it charged that each of the notes of December 24, 1914, and January 23, 1915, were executed in payment of the note immediately preceding. Appellee replied in two paragraphs, the first being general denial, and the second being addressed to the fourth paragraph of answer, and averring that said John H. applied to appellee for a loan of $2,000 on September 25, 1914, and stated that he expected to have a note for $2,000 secured by mortgage on real estate described in the complaint given him by appellant, and that, if appellee would loan him $2,000, he would deposit, assign and turn over to appellee said note and mortgage. Appellee agreed to make such loan if

such note and mortgage were so turned over. Thereupon John H. executed said note, which was held until the note and mortgage involved were assigned and delivered to the appellee as collateral security for the payment of said note; and that it made said loan depending on said security. John H. represented to appellee that he was the owner of said note and mortgage, and that appellee had no notice or knowledge that they were accommodation paper. That, at the maturity of the first note, said renewal notes were executed with the understanding that said note and mortgage should remain as collateral security therefor. Appellee had no notice or knowledge that said note and mortgage were not the property of John H., and acted in good faith, and in the honest belief that they were his property in making said original loan and the extension, and appellee never heard of the claim that said collateral note and mortgage were accommodation paper until after the commencement of this suit.

There was a trial by the court, which resulted in a general finding and judgment for the appellee against said John H. on his note for $2,499.98, and costs, and the finding and decree in appellee's favor against appellant on her note and mortgage in the sum of $2,410.50, and for the foreclosure of said mortgage and for costs.

It was further found and adjudged that said note and mortgage were collateral for said note of John H. Appellant filed her motion to modify the judgment, which was overruled. She then filed her motion for new trial, which was overruled, and she now prosecutes this appeal.

Appellant assigns as error the action of the court

in overruling her motion to modify the judgment, and in overruling her motion for a new trial. In her motion for new trial the appellant has specified: (1) That the decision of the court is not sustained by sufficient evidence. (2) That the decision of the court is contrary to law.

It appears by the evidence in this case that John H. Earle, who was the son of the appellant, applied to the appellee on September 25, 1914, for a ninety-day loan of $2,000, representing at said time that he owned an interest in an unsettled estate, and which he expected to sell to his mother, the appellant. That he expected to obtain therefor a note secured by mortgage on appellant's real estate in lieu of the money for the purchase of such interest. Appellee agreed to furnish him the loan applied for upon condition that he procure, and pledge as collateral security for the loan, the note and mortgage to be obtained from his mother as his own property. Thereupon he executed the note first mentioned in the complaint, and a written pledge, which were left in the custody of the appellee, and the money for the loan was to be placed to his order when he delivered the said note and mortgage to the appellee as collateral security for the payment of the loan.

In a few days said John H. returned with the note and mortgage involved, duly executed, which he delivered as collateral security to the appellee, stating that the note and mortgage were his absolute individual property. Thereupon the amount of the loan, less interest discounted, was placed to said John H.'s credit, and soon thereafter withdrawn from the bank. There was no restriction of any kind or nature in the collateral paper, and nothing to indicate that it was

executed as accommodation paper, and on its face appeared to be the result of a business transaction for a valuable consideration. The evidence shows that the appellee in good faith believed the collateral paper to be John H.'s individual property, and, acting on such belief, made the loan aforesaid. The evidence shows that appellee had no knowledge or intimation from any source that such collateral was accommodation paper until after the institution of the suit thereon. John H. being unable to pay his loan at maturity, the same was twice extended, renewal notes being executed at each extension. At the time of said extensions the said collateral note and mortgage had not reached their maturity.

Appellant contends that she occupied the relation of a surety to John H., and that, as her note and mortgage were executed for the purpose only of obtaining the loan evidenced by the first note mentioned in the complaint, the taking of the renewal notes without her knowledge and consent discharged her; that, it having been understood between herself and John H. that her note and mortgage were only pledged for the payment of the first note, therefore they were not pledged for the payment of either of the renewal notes; that the appellant upon no consideration, except as the maker of accommodation paper, became a surety as to her note and mortgage. and secured the payment of only the first note mentioned in the complaint, and that, such note being nonnegotiable by the law merchant, the appellee was charged with implied knowledge of her relationship, and, with such implied knowledge having twice definitely extended the time of the payment of the principal owed, she was thereby discharged. She cites

in support of her position the following Indiana cases: *Matchett* v. *Winona, etc., School Assn.* (1916), 185 Ind. 128, 113 N. E. 1; *Buck* v. *Smiley* (1878), 64 Ind. 431; *White* v. *Whitney* (1875), 51 Ind. 124; *Jarvis* v. *Hyatt* (1873), 43 Ind. 163; *Dickerson* v. *Board, etc.* (1885), 6 Ind. 128, 63 Am. Dec. 373; *Altoona, etc., Bank* v. *Dunn* (1892), 151 Pa. St. 228, 25 Atl. 80, 31 Am. St. 742. In each of these cases, however, except one, it appears that the payee at the time of the extension complained of had knowledge of the relation of suretyship. The case of *Jarvis* v. *Hyatt, supra,* is the exception, in which the matter of knowledge, or want of knowledge, is not mentioned.

Appellant cites 1 Am. and Eng. Ency. Law, pages 382, 383, from page 383 of which volume we quote: "One who has received accommodation paper 1-3. even after it has been diverted from its contemplated purpose, without notice of the diversion, in good faith and for value, is entitled to recover thereon." She also cites 32 Cyc, from page 158, of which volume we quote: "In order that a surety, as such, may be discharged by acts of the creditor or obligee, the latter must have knowledge of the existence of the relation." She also cites 8 C. J., from page 274 of which volume we quote: "There is no question that, as to persons who take accommodation paper without knowledge of its true character, the accommodation party is bound by his apparent standing on the face of the instrument and cannot claim the privileges of a surety of the real debtor." With these statements of the rule of law before us, quoted from volumes cited by appellant, we do not deem it necessary further to review the long list of authorities cited by her.

Appellant contends that, because of the fact that the note involved is noncommercial paper, and because it was unindorsed, appellee was charged with knowledge of appellant's suretyship. This does not seem to be the rule of law with notes under circumstances similar to the one in this suit. In the case of *Tharp* v. *Parker* (1882), 86 Ind. 102, the note in suit was noncommercial paper, and it was held in that case that, the suretyship not being apparent on the face of the note, the surety was not released by an extension of the time of payment, unless the payee had knowledge of the suretyship. In *Mullendore* v. *Wertz* (1881), 75 Ind. 431, 39 Am. Rep. 155, the note involved was noncommercial, and it was held that an agreement between the payee and one of the joint makers, without the knowledge or consent of the other, a surety in fact but not known as such to the payee, does not release the nonconsenting maker. In *Gipson* v. *Ogden* (1885), 100 Ind. 20, 25, which involved the collection of a judgment, it was held that a surety is not released by the extension of time, unless the creditor had notice of the relationship, and that this rule applies where the assignee of the payee takes without notice that one of the makers is surety. Other authorities to the same effect are: *Williams* v. *Scott* (1882), 83 Ind. 405, 407; *Lamson* v. *First Nat. Bank* (1882), 82 Ind. 21, 23; *Weaver* v. *Prebster* (1906), 37 Ind. App. 582, 77 N. E. 674.

Other questions are discussed in the briefs filed, both of which are ably prepared, but we do not deem it necessary to discuss them for the purposes of this opinion. A loss must be sustained, and the appellant having invested her son with apparent ownership of business paper, and thereby hav-

ing enabled him to obtain the money from appellee, she must bear the loss. It is a familiar principle of law that, where one of two innocent persons must suffer by the act of a third, he who put it in the power of the third to do the act must suffer. *Hirsch* v. *Norton* (1888), 115 Ind. 341, 17 N. E. 612.

The judgment is affirmed.

McMahan, J., not participating.