[Civ. No. 4365. First Appellate District, Division Two.—January 20, 1923.]

## CLARENCE GRANGE, Respondent, v. JUDAH BOAS COMPANY (a Corporation), Appellant.

[1] CORPORATIONS—PLEDGE—AUTHORITY OF PRESIDENT.—The president of a corporation merely by virtue of his office has no power to pledge the property of the corporation.

[2] PLEDGE — FINDINGS — EVIDENCE. — In this action to recover the amount of the alleged equity of plaintiff in and to certain bonds which had been pledged to defendant, the finding of the trial court that such bonds had been delivered to plaintiff for the purpose of securing the payment to plaintiff of a joint indebtedness of a certain corporation and two individuals was not sustained by the evidence.

[3] PRINCIPAL AND AGENT—UNAUTHORIZED PLEDGE OF BONDS—RATIFICATION—EVIDENCE.—When with notice that the securities had been pledged to defendant for the debt of his principal, plaintiff attended at the office of defendant and paid interest accruing on the debt of his principal subsequent to the date of the alleged unauthorized pledge, such acts on his part constituted evidence proving, or tending to prove, a ratification of the alleged unauthorized act of his principal in pledging the securities to defendant; and the trial court should have made a finding on defendant's plea of ratification as a defense.

[4] ID. — UNAUTHORIZED PLEDGE BY AGENT — HOLDER FOR VALUE — NOTICE—ESTOPPEL.—Notwithstanding the bonds were not negotiable instruments, they having been received by defendant in good faith in the ordinary course of business as security for a pre-existing debt, and from one to whom plaintiff had executed a power of attorney which expressly authorized the latter "to

bargain and agree for, buy, sell, mortgage, hypothecate, and in any and every way and manner deal in and with . . . choses in action and other property in possession or in action," defendant became thereby a holder for value, and its title thereto was superior to that of plaintiff, notwithstanding plaintiff's agent violated his obligation to plaintiff when he pledged the bonds to defendant for his own benefit. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Reversed.

The facts are stated in the opinion of the court.

A. L. Weil and Harris F. Shaw for Appellant.

Walter H. Linforth for Respondent.

STURTEVANT, J.—The trial court awarded a money judgment against the defendant and the defendant has appealed and has brought up a bill of exceptions.

An understanding of the points made requires that we go back to the year 1912 to commence. In that year R. B. Hanford, W. S. Tevis, and the Hanford Investment Company were each engaged in the business of dealing in securities. The Hanford Investment Company had three directors, the two individuals just named, and Miss O'Connell. At that time, and during the years following, Mr. Tevis was president and Mr. Hanford was vice-president, or Mr. Hanford was president and Mr. Tevis was vice-president, but during the same period of time Miss O'Connell was secretary. During the same period of time Miss O'Connell was the private secretary to Mr. Hanford and was the private secretary to Mr. Tevis. She had the combination to the safe in which were the valuable and confidential papers of Mr. Hanford and Mr. Tevis and of the corporation. During all the times mentioned the corporation and both of those men had numerous interests and each and all were heavily indebted. Their debts were evidenced by promissory notes held by numerous banks and by certain private individuals. Many of the notes were secured by corporate securities pledged to secure the same. When their affairs stood in this condition, they employed the plaintiff to take care of their outstanding obligations and

to pay pressing creditors by negotiating loans from other persons, and also by making such arrangements with the creditors as from time to time became necessary to prevent suits and attachments. In transacting this business the plaintiff was to advance out of his own funds certain moneys and repay himself from time to time when the financial affairs of said persons would permit the repayment. In transacting the business the plaintiff took up certain obligations and detached the securities pledged to secure the same, and from time to time pledged those securities with the same or other creditors on other obligations. The plaintiff testified that R. G. Hanford, W. S. Tevis, and the Hanford Investment Company, jointly and severally authorized the plaintiff to hold the securities so taken up to secure the plaintiff for advances made by him. The plaintiff testified in this connection that he never saw a resolution of the Hanford Investment Company authorizing anyone to make a pledge of its securities, and the plaintiff did not testify, and there is no evidence in the record to the effect that any officer of the Hanford Investment Company was ever authorized to pledge any of its securities.

On July 2, 1912, Albert Hanford delivered to the Hanford Investment Company, among other debentures, five bonds, numbers 1671–1675, of the United Light and Power Company, which delivery was evidenced by a writing as follows:

"San Francisco, California, July 2, 1912.

"Received from Albert Hanford thirty five six per cent first mortgage United Light and Power bonds, par $1000 each, numbered 1671 to 1675 inclusive; six Natomas Consolidated of California, seconds, numbered 479 to 484 inclusive; six Natomas Consolidated of California, seconds, numbered 463 to 468 inclusive. These bonds are a temporary loan to the Hanford Investment Company to be returned within a short time and not later than thirty days from date. In case of the death of Albert Hanford they are to be returned immediately to his estate.

"HANFORD INVESTMENT COMPANY,

"By WILLIAM S. TEVIS."

The above letter was never exhibited to Mr. Grange until he saw the same in the courtroom during the trial of this case.

In taking up one of Mr. Tevis' outstanding debts, the plaintiff came into possession of the five bonds just mentioned and the equity in which is the subject of this suit. At no time did Mr. Tevis, Mr. Hanford, or the Hanford Investment Company, make any indorsement on the bonds, or execute or deliver to the plaintiff any writing in the nature of a blank indorsement, a blank assignment, a bill of sale, or other paper evidencing or indicating a transfer of the bonds.

While the bonds were so in the possession of the plaintiff he received a summons to the bedside of his wife, who was sick in Europe. When that summons was received, and for some weeks prior thereto, the employers of Mr. Grange had been negotiating with Mr. Moore for the financing of the United Light and Power Company. That arrangement contemplated that all of the bonds of the United Light and Power Company would be called in and other securities issued in lieu thereof. He prepared a letter dated April 11, 1914, and delivered it to Miss O'Connell. That letter was as follows:

"San Francisco, April 11th, 1914.
"Hanford Investment Company.
    "San Francisco, Cal.
        "Attention of Miss O'Connell.
"Gentlemen:

"Herewith I am handing you securities, bonds and stocks, received by me as collateral security for the joint indebtedness of yourselves, R. G. Hanford and William S. Tevis. These securities are to be held by you in trust for me subject to the disposition, however, by your company for the following purposes.

"Bonds of your subsidiary companies are to be used, if necessary, for exchange under the Moore agreement. Any of the securities may be redeemed at market from my lien. Any moneys received by you you will please deposit to my credit in bank. Any securities received in exchange kindly hold until my return.

"The object of this deposit with you is to prevent any embarrassment should these securities be needed before my return from Europe.

"Yours very truly,"

At the time that the letter was delivered there was a locked tin box in the safe which had contained the securities

which had been in the possession of Mr. Grange and that box was marked "C. Grange." In that safe was also a drawer which had been used by Mr. Grange and which also had written thereon "C. Grange."

At the same time that the letter was handed to Miss O'Connell, Mr. Grange handed to her a bunch of securities, including the bonds above mentioned. He testified: "I gave them to her as the Hanford Investment Company. I deposited them with the Hanford Investment Company." The witness also testified that he asked her to take care of them. He did not testify that she consented to do so, or that she made any promise to him, or entered into any agreement with him of or concerning the custody of the papers. About that same time, whether as part of the same transaction or a few hours afterward, the witness testified: "When I went to Europe I gave the key to the drawer to Miss O'Connell. I don't know who got the key to the box, I gave it to somebody, it was not Mr. Tevis."

Whether preceding or following the conversation between Mr. Grange and Miss O'Connell does not appear, but, nevertheless, shortly before Mr. Grange left for Europe he executed a general power of attorney appointing Mr. W. S. Tevis his attorney in fact. The instrument is altogether broad and contains no restrictions or limitations. He also prepared a letter of even date therewith, which is as follows:

"Mr. William S. Tevis,

"San Francisco, Calif.

"Dear Sir:

"Enclosed herewith I am handing you my power of attorney which is absolute in form and detail. Should you have occasion to make use of the authority contained therein, I would ask that you act for me as you know I would were I here.

"Any cash arising out of the sale of real estate deposit in a special account in some bank or banks in San Francisco, subject to my order and your own under the authority of the power of attorney.

"Should the Union Land Company, that Hanford Investment Company, or any other of your subsidiary institutions desire to repurchase from me any of the lands I obtained from the Union Land Company, see that an adequate price is paid for lands so conveyed, either in cash or securities

convertible at an early date; bearing in mind that I have still
unliquidated paper outstanding in a very large amount for
money borrowed for the benefit of yourself and Mr. Hanford.

"Yours very truly,

"C. GRANGE."

Thereafter he delivered the power of attorney and the let-
ter just quoted to Mr. W. S. Tevis.

Some time prior to his departure for Europe, among other
financial transactions which the plaintiff conducted, was one
with the defendant, the Judah Boas Company. The plain-
tiff called on that company and negotiated a loan for Mr.
Tevis. He delivered to that company the promissory notes
of Mr. Tevis and certain securities in pledge. During all of
the times that we have mentioned the plaintiff had in his
employ, as an accounting and financial agent, a Mr. Crook.
Although Mr. Crook was the personal agent of Mr. Grange
in Mr. Grange's office in the Merchants National Bank
building, he also attended him in the offices of the Hanford
Investment Company, and whether Mr. Grange was in San
Francisco or elsewhere, Mr. Crook acted as the personal repre-
sentative of Mr. Grange.

After Mr. Grange had left San Francisco the Judah Boas
Company notified Mr. W. S. Tevis that additional securities
should be deposited with it to protect that company from loss
on the loan made to Mr. Tevis. Thereafter Mr. Tevis di-
rected Mr. Crook to take out of the package of securities
which Mr. Grange had handed to Miss O'Connell, the bonds
in question, and also directed him to deliver the bonds to the
Judah Boas Company. Mr. Crook did as he was directed and
in doing so he did not exhibit or mention to the appellant the
existence of the power of attorney, or any one of the letters
above set forth, or an instrument in writing evidencing a
transfer. This suit was commenced to recover the amount
of the alleged equity of the plaintiff in and to these bonds.

In his complaint the plaintiff alleged "that prior to the
eleventh day of April, 1914, there was delivered and pledged
to plaintiff by the owner thereof, for the purpose of secur-
ing the payment to him of an indebtedness," etc., the bonds
above mentioned. The second finding made by the trial
court and which is the only finding in response to the plain-
tiff's allegation is as follows: "That prior to the eleventh
day of April, 1914, there was delivered and pledged to plain-

tiff by the Hanford Investment Company, for the purpose of securing the payment to plaintiff of a joint indebtedness of the said Hanford Investment Company, W. S. Tevis and R. G. Hanford,'' the above-mentioned bonds. [1] From what we have quoted from the record it is patent that the Hanford Investment Company never made any pledge to the plaintiff. The most that can be said is that the record purports to show a pledge by the president of that corporation, but that officer merely by virtue of his office has no power to pledge the property of the corporation. (*Black* v. *Harrison Home Co.,* 155 Cal. 121 [99 Pac. 494]; 14a C. J., p. 464, secs. 2321, 2322.)

[2] It is clear that the plaintiff entertained the opinion that Miss O'Connell became his confidential fiduciary agent to take and hold the bonds as against Mr. W. S. Tevis and the Hanford Investment Company. We think he is mistaken as to any rights flowing to him out of this feature of the case. In the first place, he does not state in his testimony that she agreed to so act; in the second place, she states most positively that she never entered into any such agreement; and in the third place, she was the confidential agent of the Hanford Investment Company and of Mr. Hanford and of Mr. Tevis. The record is all one way to the effect that whatever conversation was held between Mr. Grange and Miss O'Connell, the same was not in the presence or hearing of Mr. Tevis or of Mr. Hanford, and was never brought to their attention. Under those circumstances, conceding that Mr. Grange had attempted to impose on Miss O'Connell a trust in his favor, adverse to the trust already imposed on her in behalf of her beneficiary, the Hanford Investment Company, such an attempted arrangement would be wholly illegal. (Civ. Code, secs. 1992, 2230–2234.) Mr. Grange never claimed to be the owner of the bonds. The most he ever claimed was a special property right based solely on the theory of a valid pledge by the Hanford Investment Company. There was no such pledge and the second finding, therefore, is wholly unsustained by the evidence.

Mr. Grange returned from Europe about the ninth day of July, 1914. Almost immediately thereafter he was fully informed regarding the pledge of the bonds to the appellant. He testified that he made a demand on Judah Boas (now deceased) for the return of the bonds. He testified that he de-

murred to Mr. W. S. Tevis regarding the pledge of the bonds and that he would proceed to recover possession of the bonds, and that Mr. Tevis stated that within a short time the United Light and Power Company would be financed and that thereupon seventy-five thousand dollars would be paid to Mr. Grange. Both for the months of July and August of 1914 Mr. Grange paid to the appellant the interest on the obligation for which the bonds had been pledged. Furthermore, there was evidence to the effect that a short time after the plaintiff returned from Europe another demand for further security was made by the appellant. In response to that demand Mr. Grange attended at the office of the appellant, and appellant's officer showed him that there was a great depreciation in the securities which it held. Mr. Ben Boas testified: "At that time we went over the list of the securities that we had in our possession. He didn't claim any of the securities that we had belonged to him at that time." The five bonds were deposited with the appellant in consideration of forbearance on appellant's part. The appellant did forbear. The plaintiff and the plaintiff's principal accepted and retained the consideration with full notice of all of the facts. [3] Moreover, when the notice that his securities had been pledged for the debt of Mr. W. S. Tevis, Mr. Grange thereafter attended at the office of the appellant and paid interest accruing subsequent to the date of the alleged unauthorized pledge, such acts on his part constituted evidence proving, or tending to prove, a ratification of the alleged unauthorized act. The appellant pleaded ratification as a defense. True it is that the defense, as pleaded, might have been subject to a demurrer as not being properly pleaded, but no demurrer was interposed. A reading of the record shows that the case was tried on the theory that the defense had been sufficiently pleaded. The trial court should have made a finding on the issue. However, there is no finding that purports to cover the subject.

The appellant makes many other contentions, but in view of what we have said we do not find it necessary to take up and consider other points made in the briefs.

The judgment is reversed.

Langdon, P. J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 20, 1923, and the following opinion then rendered thereon:

THE COURT.—Upon petition to have the above-entitled cause heard and determined by this court after judgment in the district court of appeal of the first appellate district, division two.

For the purposes hereof the validity of the following contentions urged by respondent in support of this application may be conceded: That there was a valid pledge of the bonds in question from the Hanford Investment Company to plaintiff; that the bonds were not negotiable instruments under the law in effect at the time of their issuance; that the defendant did not forbear, or agree to forbear, in consideration of the pledge of the bonds to it; that there was no ratification by plaintiff of the act of Tevis in pledging the bonds to defendant. [4] Nevertheless, the defendant, having received the bonds in good faith in the ordinary course of business as security for a pre-existing debt, became thereby a holder for value. (*Smitton* v. *McCullough*, 182 Cal. 530, 537, 538 [189 Pac. 686], and cases there cited.) The plaintiff, by his power of attorney to Tevis expressly authorized the latter ". . . To bargain and agree for, buy, sell, mortgage, hypothecate, and in any and every way and manner deal in and with . . . choses in action and other property in possession or in action." Therefore, Tevis, in hypothecating the bonds of defendant for his own benefit, is not to be regarded in law as a thief who stole them, but as an agent who, while violating his obligation to his principal, was nevertheless acting in the course and within the scope of his agency. The case is thus brought within the rule that "One who has allowed another to assume the apparent ownership of property for the purpose of making any transfer of it, cannot set up his own title, to defeat a pledge of the property, made by the other, to a pledgee who received the property in good faith, in the ordinary course of business and for value." (Civ. Code, sec. 2991.) This rule is but an application of the equitable doctrine of estoppel, one of the expressions of which is found in the maxim that "When one of two innocent persons must suffer by the act of a third, he,

by whose negligence it happened, must be the sufferer.'' (Civ. Code, sec. 3543; *National Bank of San Mateo* v. *Whitney,* 181 Cal. 202, 205 [8 A. L. R. 298, 183 Pac. 789] ; *Brittan* v. *Oakland Bank of Savings,* 124 Cal. 282, 289 [71 Am. St. Rep. 58, 57 Pac. 84].)

For these reasons the judgment of the trial court in favor of the plaintiff was properly reversed, and the petition is therefore denied.

Wilbur, C. J., Lawlor, J., Lennon, J., Waste, J., Seawell, J., Kerrigan, J., and Myers, J., concurred.