[Civ. No. 11300.   First Appellate District, Division One.—August 12, 1940.]

FOSTER C. PHELPS et al., Plaintiffs and Appellants, v. AMERICAN MORTGAGE COMPANY (a Corporation) et al., Defendants; MORTGAGE GUARANTEE COMPANY (a Corporation) et al., Respondents; GEORGE E. KENNEDY, Defendant and Appellant.

[Civ. No. 11301.   First Appellate District, Division One.—August 12, 1940.]

SECURITY–FIRST NATIONAL BANK OF LOS ANGELES, Executor, etc., et al., Plaintiffs and Appellants, v. METROPOLITAN LIFE INSURANCE COMPANY (a Corporation) et al., Respondents; JESSIE D. KARNES, Defendant and Appellant.

Mott, Vallée & Grant, Paul Vallée, Otho S. Vernon, Thomas B. Reed, Richard J. O. Culver and Felix McGinnis for Appellants.

M. J. Rankin, Seth I. Colver, Milo V. Olson, Walter S. Home, Fleming & Robbins, Clay Robbins, and Kenton A. Miller for Respondents.

PETERS, P. J.—Action numbered 11300, the Phelps case, was brought to obtain an adjudication that plaintiffs named therein hold a valid first deed of trust on property in the city of Los Angeles. Action numbered 11301, the Begley case, was brought to foreclose the alleged lien. These appeals are prosecuted from judgments which decreed that plaintiffs have no interest in the property. The actions were consolidated for trial and appeal. The sufficiency of the complaint in the Phelps action was upheld on a former ap-

peal. (*Phelps* v. *American Mtg. Co.*, 6 Cal. (2d) 604 [59 Pac. (2d) 95].)

On November 22, 1926, Arthur Gilman and Nellie Gilman, owners of the property in question, executed 125 promissory notes in favor of American Mortgage Company, each in the sum of $1,000, and as security therefor gave the payee a single deed of trust covering the property. This deed of trust constituted a first lien on the property. The notes were due five years from date, or prior thereto upon the payment of a bonus. They were given for a loan made by American Mortgage Company to the Gilmans, that company being then engaged extensively in the financing of apartment houses and hotel buildings. Upon the property was an apartment house known as the Nellman Apartments.

The American Mortgage Company offered the notes for sale to its clientele, and they were all sold and transferred to purchasers. In the course of dealings with these notes they were referred to as the Nellman notes. The plaintiffs herein are the holders of some, but not all, of these notes. Other note holders who did not join as plaintiffs were named as defendants, and certain of them filed answers praying for the same relief as plaintiffs.

In 1927 or 1928 the American Mortgage Company of California succeeded to all rights of the American Mortgage Company, the new corporation having the same officers, directors and stock ownership as its predecessor. Both corporations will be referred to herein as the American Mortgage Company. On April 7, 1931, a federal receiver was appointed for the mortgage company.

Early in February, 1931, the American Mortgage Company, by letter, telephone, or personally, requested the holders of the Nellman notes to bring them in to the company, as they were to be paid. Letters written to some of the note holders stated that the notes were to be placed in escrow for collection. The plaintiffs and some of the other Nellman note holders delivered their notes to the American Mortgage Company endorsed in blank, as requested by that company, and were given receipts therefor. They signed instructions, which recited that the notes were handed to the company "for collection", and which set forth the amount of principal and interest which the company was to "collect", and the disposition the company was to make of the proceeds "when

collected". Of the 125 notes, 105 were surrendered to the company at this time.

In the meantime, before the holders of the notes were asked to bring them in for collection, the American Mortgage Company had become the owner of the Nellman Apartments through foreclosure of a second deed of trust also executed in its favor in November, 1926. The note holders in general, and the plaintiffs in particular, were not aware of this fact. Without receiving any funds in payment of the notes, and acting in fraud of the rights of plaintiffs, the American Mortgage Company delivered the endorsed notes to Title Guarantee and Trust Company, trustee under the first deed of trust, with a request for a reconveyance. The request recited that the American Mortgage Company was the legal owner of the 125 promissory notes and of all other indebtedness secured by the deed of trust, that the notes had been fully paid, and that they were surrendered for cancellation. A letter dated February 11, 1931, and 105 notes accompanied the request. The letter stated that $20,000 would be paid to the trustee to hold for presentation of the 20 outstanding notes. The reconveyance was recorded at the request of the trustee on February 14, 1931. It reconveyed the property "to the person or persons legally entitled thereto", as provided in the deed of trust. The court found that the trustee, Title Guarantee and Trust Company, had no notice of plaintiffs' interest in the notes and deed of trust, and that it acted in good faith and without negligence. Whether the trustee had the $20,000 on hand on the date the reconveyance was recorded, or received it several days later, is one of the controverted questions in this case.

The American Mortgage Company, upon the security of the real property, then obtained a loan of $80,000 from the Mortgage Guarantee Company, for which a note and deed of trust were executed by Fred A. Giesy and wife, who held title for the American Mortgage Company. This deed of trust was also recorded on February 14, 1931, at the request of Title Guarantee and Trust Company, which was named as trustee therein. The proceeds of the loan made by Mortgage Guarantee Company to American Mortgage Company were used in part to pay the 20 outstanding notes, funds being remitted to Title Guarantee and Trust Company for that purpose, and in part to discharge pre-existing indebtedness

of the American Mortgage Company to Mortgage Guarantee Company. The respondents are the Mortgage Guarantee Company, and its successors in interest. Their rights, however, are measured by the rights of that company, a *lis pendens* being on file when their interests came into existence.

The plaintiffs, holders of Nellman notes, seek in these actions to set aside the reconveyance which the American Mortgage Company wrongfully procured without collection of funds to pay said notes, and to reinstate the deed of trust securing these notes as a first lien as against those claiming through defendant Mortgage Guarantee Company. The court found that this company was an encumbrancer for value, and was without notice that the reconveyance was obtained in fraud of rights of the Nellman note holders.

This basic finding is attacked by appellants. Among other contentions, it is asserted in the briefs of appellants that Mortgage Guarantee Company cannot be a *bona fide* encumbrancer because part of the consideration paid by it was the cancellation of a pre-existing indebtedness of the American Mortgage Company. On the oral argument appellants' counsel conceded that this point was without merit. The concession is, of course, in accordance with the law. (Civ. Code, sec. 1606.)

There is no contention made that the Mortgage Guarantee Company had actual knowledge of the fact that American Mortgage Company was acting wrongfully in fraud of the rights of the Nellman note holders. The complaint which was held sufficient on the former appeal alleged that all defendants had full knowledge. The appellants do contend, however, that the Title Guarantee and Trust Company acted in violation of the terms of the trust when it reconveyed the property. This contention will be considered later in this opinion.

The main contention of appellants is that the notes were deposited with the American Mortgage Company subject to an escrow, and that it held the notes in escrow under instructions to surrender them only on collection. Based on this premise, it is urged that, where delivery is made by an escrow holder in violation of escrow instructions, such delivery is ineffective even as to *bona fide* purchasers and encumbrancers.

The theory of respondents, sustained by the trial court, is that the Nellman note holders by delivering their notes to

the American Mortgage Company ҁndorsed in blank clothed that company with *indicia* of title and ownership, and appointed that company their undisclosed agent for the purpose of collecting said notes, and that, by reason of the carelessness and negligence of the note holders in this respect, they are estopped as against respondents, the *bona fide* encumbrancer, and those claiming through it, from asserting any interest in the property which secured the notes. ■ In respondents' analysis this case calls for application of the maxim that, where one of two innocent parties must suffer for the wrongdoing of a third, he, who by his conduct enabled the wrongdoer to accomplish the wrong, must bear the loss. (For decisions applying this maxim see cases listed in 10 Cal. Jur. 506; 5 Cal. Jur., Ten-Year Supp. 499; 21 Cor. Jur., p. 1176, sec. 180 et seq.) This maxim is codified, although not exactly in these terms, in section 3543 of the Civil Code. That section provides: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."

■ It is to be noted that the Civil Code section uses the term "negligence". It is appellants' theory that they are not chargeable with negligence, but only with misplaced confidence in a trusted agent, and that misplaced confidence is not negligence. It is urged that, under the cases, the doctrine that a person is estopped from claiming title when he has entrusted another with *indicia* of ownership only applies where it is shown that the owner of the property has been guilty of actual negligence. Appellants point out that the trial court did not find that they were guilty of actual negligence, but found, in effect, that they were guilty of misplaced confidence and that this constituted negligence. It is urged that this finding or conclusion cannot be supported.

After reading the cases, and giving consideration to their *rationale*, we are convinced that, where an owner deposits his property with another and gives the depository such *indicia* of ownership that a reasonable man dealing with such agent is reasonably led to believe the agent is the owner of such property and parts with value in reliance thereon, the third person will be protected even though the true owner is guilty of no more than misplaced confidence. Such misplaced confidence must be held to be negligence within the meaning of the maxim above-referred to.

That this is the true rule was recognized by the Supreme Court in *Camerer* v. *California Sav. etc. Bank,* 4 Cal. (2d) 159, 172 [48 Pac. (2d) 39, 100 A. L. R. 667], where the court stated:

"We are mindful of cases where an estoppel has been raised against the owner of indorsed certificates of stock or bearer bonds based on an entrustment of possession coupled with authority to deal in some manner with the securities, although the owner cannot be said to have been negligent in the sense that as a man of reasonable prudence he had cause to doubt the integrity of his agent. (*Powers* v. *Pacific Diesel Engine Co.,* 206 Cal. 334 [274 Pac. 512, 73 A. L. R. 1398]; *Lynch* v. *International Banking Corp.,* 68 Cal. App. 432 [229 Pac. 968]; *Grange* v. *Judah Boas Co.,* 60 Cal. App. 484; [213 Pac. 712]; 13 Cal. Law Rev. 251; 17 Cal. Law Rev. 403.) In such cases the owner is the victim of misplaced confidence, and can be said to be negligent only in the restricted sense that he has placed it within the power of his agent to accomplish a fraud. This doctrine is applied to protect *bona fide* purchasers and pledgees, and may also be invoked in other situations where equity and good conscience dictate."

It is true that in the Camerer case the court held that the above-quoted doctrine was not there applicable because the stocks and bonds involved had not passed to a *bona fide* purchaser, but where the rights of a *bona fide* purchaser or encumbrancer are involved, we are convinced from the standpoint of equity and fairness that the doctrine is applicable and that the rule above-quoted is sound.

Appellants rely strongly on *Verder* v. *American Loan Society,* 1 Cal. (2d) 17 [32 Pac. (2d) 1081]. That case, similar to the present case as to some of its facts, involved another note sold by the American Mortgage Company and returned to it for collection. But that case did not involve the rights of persons who were purchasers or encumbrancers in good faith. (1 Cal. (2d) 17, at pp. 27–30.) While it is true that the decision uses language from which it may be implied that something more than misplaced confidence must be present before the doctrine of entrustment with *indicia* of ownership may be invoked by a *bona fide* purchaser, such language is in direct conflict with the court's later remarks in *Camerer* v. *California Sav. etc. Bank, supra.* We are of the opinion that the Camerer case states the proper rule.

■ The appellants also contend, as noted above, that the doctrine of entrustment with *indicia* of title may not be relied on by a *bona fide* purchaser where instruments are delivered by an escrow holder in violation of instructions. They find authority for a rule that where an instrument of title, such as a deed, is delivered by an escrow holder before the happening of the condition upon which delivery was to take place, the deed is ineffective and no title passes even to a *bona fide* purchaser. The decisions are in conflict on this proposition. (See notes, 48 A. L. R. 405; 54 A. L. R. 1246; 19 Am. Jur. 439; 4 Tiffany, Real Property, 3d ed., 236; 10 Cal. Jur. 591; 5 Cal. Jur. Ten-Year Supp. 529; 16 Cal. Law Rev. 141.)

In *Promis* v. *Duke,* 208 Cal. 420, 427 [281 Pac. 613], the Supreme Court stated that, according to the weight of authority, a deed delivered in violation of escrow instructions is ineffective even as to purchasers in good faith. But a decision on this point was not necessary in that case since the party whose rights were at issue took with knowledge. That the court may not have intended definitely to declare that this was the rule in this state is indicated by the fact that the opinion further states that it was unnecessary to determine the rights of the innocent encumbrancer for the reason that the trial court had protected him and the respondent had not appealed.

In the instant case we do not find it necessary to pass upon the above proposition, concerning which the authorities are in conflict, for the reason that, in our opinion, even if the escrow rule is in force in this state, it is not applicable to the facts involved herein.

The basis of the decisions which protect the grantor where a deed is delivered by an escrow holder in violation of instructions even though the property has reached a *bona fide* purchaser is that without a valid delivery the deed never becomes effective. The theory is expressed in *Steffian* v. *Milmo Nat. Bank,* 69 Tex. 513 [6 S. W. 823, 824], as follows: "It is elementary law that the delivery of a deed is requisite to its validity as a conveyance. To take effect, it is quite as necessary that it should be delivered as that it should be signed. To complete a delivery in its legal sense, two elements are also essential. The instrument must not only be placed within the control of the grantee, but this must be

done by the grantor with the intention that it shall become operative as a conveyance. It follows from these first principles that an instrument which passes into the possession of the grantee, without such intention on part of the grantor, is wholly inoperative; and that a purchaser from the former acquires in law no title to the property which it purports to convey. It is accordingly held that even a vendee from the grantee, who has paid value without knowledge of the facts, is not an innocent purchaser in such a case.'' (See, also, *Forcum* v. *Brown,* 251 Ill. 301 [96 N. E. 259]; *Franklin* v. *Killilea,* 126 Wis. 88 [104 N. W. 993]; 16 Cal. Law Rev. 141.)

In the instant case respondents seek to avoid application of the escrow rule, if that rule is in effect in this state as contended by appellants, on the ground that a true escrow was not created. Respondents find the law to be that a deposit in escrow, except where death of the grantor is the condition, must be pursuant to a binding contract between parties beneficially interested who agree on deposit with a third party. (*Holland* v. *McCarthy,* 173 Cal. 597 [160 Pac. 1069]; 10 Cal. Jur. 580; 5 Cal. Jur. Ten-Year Supp. 522.) The question as to necessity of an agreement usually arises where the right of a grantor to recall the instrument, or the effect of his death before performance by the grantee is involved. But where the question is as to the rights of a subsequent purchaser following delivery by one having *indicia* of ownership, it seems anomalous that his rights should depend on whether the deposit was pursuant to binding contract or was unilateral, or on whether the depositary is an agent for one party only, as is usual where an instrument is deposited for collection, or is an agent of both parties agreeing on the escrow holder. For this reason we prefer to place our decision herein on other grounds than the absence of a true escrow. It is not clear from the cases whether or not California has adopted the so-called escrow rule relied upon by appellants. For the purposes of this opinion we may assume, without deciding, that the escrow rule is in effect in this state. Even if this be assumed, we are of the opinion that that rule would have no application to the facts of the instant case.

The real basis of the so-called escrow rule, as indicated by the cases above-referred to, is that the documents that were

there involved that were delivered to the escrow holder to be delivered upon performance of certain conditions, were not binding obligations or deeds until delivered by the escrow holder upon performance of the conditions. When the escrow holder delivered them to the third party without performance of the conditions, he was delivering documents that never had represented binding obligations and never became binding, even as to *bona fide* purchasers, because of lack of a proper delivery. That defect rendered the instrument as defective as if it were incomplete on its face. But that is not the present case. When the Gilmans executed the Nellman notes in 1926 and delivered them to the American Mortgage Company as payee, the notes became valid binding obligations. These notes were then transferred to the appellants and others as binding existing obligations. When the appellants delivered these notes to the so-called escrow holder endorsed in blank they were not entrusting that holder with a dead, incomplete, inoperative document, as where an undelivered grant or deed is deposited, but they were entrusting the depositary with apparent title to a live, complete, operative instrument representing an existing and binding obligation. The distinction is between entrusting a depositary with a document totally invalid until delivered, and entrusting him with the *indicia* of ownership to a valid instrument representing a valid existing obligation.

There are numerous cases from this and other jurisdictions holding that *bona fide* purchasers or encumbrancers from a depositary of valid instruments representing valid, binding, existing obligations, where the owner has entrusted the *indicia* of ownership to the depositary, and he has delivered the instruments in violation of his instructions, will prevail over the true owner. This equitable principle is frequently applied to stock certificates endorsed in blank. The law applying to stock certificates was extensively reviewed in *Powers* v. *Pacific Diesel Engine Co.*, 206 Cal. 334 [274 Pac. 512, 73 A. L. R. 1398]. (This case is the subject of a note in 73 A. L. R. 1405, where the California cases are listed at p. 1407.) In that case the owner of stock certificates entrusted them, endorsed in blank, to two men, who falsely represented that they were agents of the issuing corporation, which was taking up all its stock to correct its records. The stock reached the

hands of a *bona fide* purchaser whom the court protected by its decision.

Where a negotiable promissory note reaches the hands of a holder in due course, he is protected by section 3097, Civil Code, under which a valid delivery is conclusively presumed as to such holders. But there is a field for application of the equitable doctrine of entrustment with *indicia* of ownership as to such instruments where it is the maker or other person, not a holder within the meaning of section 3097, *supra,* who is deceived by the appearance of title. It has been held that where an agent for collection of a note, appearing to be the owner by virtue of the form of endorsement, accepts a partial cash payment and new notes due at a future date in satisfaction, or accepts a transfer of property in discharge of the note in violation of the instructions of his principal, the maker will be protected. (*Kaku* v. *Giffen,* 13 Cal. App. (2d) 683 [57 Pac. (2d) 1001]; *Home Savings Bank* v. *Stewart,* 78 Neb. 624 [110 N. W. 947]; 21 C. J. 1177; see, also, *Earle* v. *Fletcher American Nat. Bank,* 70 Ind. App. 559 [123 N. E. 706].)

In *Kaku* v. *Giffen, supra,* the court said (p. 685): "The essential question here is not who was in fact the owner of the note or whether Wells [agent for collection] exceeded the authority given him by appellant. The real question is whether respondents were justified in dealing with Wells as the owner of the note, and this must be answered in their favor. The appellant had clothed Wells with the apparent ownership of the note and power to dispose of the same; the apparent ownership was confirmed by the filing of a suit; the respondents had dealt with Wells in getting the suit dismissed; and they had no knowledge that the endorsement was not what it appeared to be."

In the instant case it was not the maker who was deceived by the appearance of ownership in American Mortgage Company created by the Nellman note holders, but the trustee under the deed of trust securing them. Acting upon this appearance of ownership, the trustee reconveyed, and thereby enabled the American Mortgage Company, through its nominee Giesy, to hold record title free and clear of encumbrances. The Mortgage Guarantee Company, relying in good faith on the record title, advanced funds and extended credit on the security of a deed of trust executed in its favor. The

reconveyance from the trustee, it is true, was procured by the fraudulent representation of American Mortgage Company, clothed with *indicia* of ownership, that the notes had been paid in full. But the execution and delivery of the reconveyance by the trustee, which held legal title, was valid as to *bona fide* purchasers and encumbrancers although induced by fraud, in like manner as other transfers secured through fraud practiced on the grantor are binding as to such persons.

Cases which hold that the owner is not estopped even as against a *bona fide* purchaser where an instrument incomplete in essential particulars is filled in without authority, where the owner's signature is forged or the the amount of a promissory note raised, or where there is a theft of an instrument, and hence no sufficient entrustment, do not govern the instant case. (For such cases see, *Bryce* v. *O'Brien,* 5 Cal. (2d) 615 [55 Pac. (2d) 488]; *Trout* v. *Taylor,* 220 Cal. 652 [32 Pac. (2d) 968]; *Burns* v. *Ross,* 190 Cal. 269 [212 Pac. 17]; *Walsh* v. *Hunt,* 120 Cal. 46 [52 Pac. 115, 39 L. R. A. 697]; *Kohn* v. *Sacramento Electric, Gas & Ry. Co.,* 168 Cal. 1 [141 Pac. 626]; *The Yamato* v. *Bank of S. California,* 170 Cal. 351 [149 Pac. 826].)

Appellants also contend that the reconveyance by the Title Guarantee and Trust Company was made in violation of the terms of the original deed of trust, in that the company reconveyed without having in its possession the funds to pay the 20 outstanding notes, together with interest and bonus thereon, on the date (February 14, 1931) it caused the reconveyance to be recorded. The record is not entirely clear as to whether the trustee actually had the proceeds with which to pay the 20 outstanding notes in its possession when it recorded the reconveyance, or whether on that date it had merely been promised that that sum would be deposited out of the proceeds of the $80,000 loan. There is evidence that the trustee did not actually receive the $20,000 until several days after February 14, 1931. At any rate, it is an admitted fact that the trustee never received any sum to pay the delinquent interest or the bonus on the 20 outstanding notes. We may assume, for the purposes of this opinion, that the trustee did not receive the $20,000 to pay the principal of the 20 outstanding notes on the date it recorded the reconveyance. This fact would not assist appellants. They are in no position to raise the point. Their

notes, endorsed in blank, were in the hands of the trustee on that date. If the trustee violated its duty to the holders of the 20 outstanding notes that had not been deposited with the American Mortgage Company, such violation could not legally affect the rights of appellants. The holders of these 20 outstanding notes were paid, by the trustee, the principal of their notes. They are not parties to this action and are not attacking the reconveyance. Appellants are estopped from challenging the reconveyance which they, by their conduct, induced the trustee to make. As to the Mortgage Guarantee Company, a subsequent *bona fide* purchaser and encumbrancer for value, through whom respondents claim, appellants, who entrusted their notes to American Mortgage Company, with *indicia* of ownership, are in the same position as if their notes had actually been paid, and are estopped from attacking the title of such purchaser or encumbrancer.

As already pointed out, Mortgage Guarantee Company, and respondents who claim through that company, are *bona fide* purchasers. Although it is the law that a transfer by a trustee in contravention of the express provisions of the trust is void (Civ. Code, sec. 870) that rule has no application to the factual situation here presented. Where circumstances creating an estoppel are present, as here, a purchaser taking title without notice of the breach of trust secures an unimpeachable title. (65 Cor. Jur., p. 774, sec. 644; 65 Cor. Jur., p. 776, sec. 647; 27 R. C. L., p. 694, sec. 458.) The appellants, for reasons already set forth, inasmuch as they were not injured by the asserted violations of the trust, are estopped from setting up these violations for the purpose of defeating respondents' title. The same reasons that estop appellants from attacking the reconveyance on the ground that they had not been paid, are applicable to estop them from attacking the reconveyance on the ground that there was a violation of the terms of the trust.

We are not unmindful of the fact that appellants have been seriously injured by reason of the fraudulent and criminal acts of the American Mortgage Company. They have lost large sums of money through the criminal and fraudulent acts of the officers of that company. The appellants had no intent to deceive or defraud. They are completely innocent of any wrongful intent. But the respondents are also innocent. They invested their money in the honest belief that appellants

had been paid in full. Appellants, innocently, it is true, created the situation that made the consummation of the fraud possible. Under such circumstances, although we sympathize with appellants, they having created the situation, must, as against respondents, bear the loss.

The judgments appealed from are affirmed.

Knight, J., and Ward, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 10, 1940.